REGAN, Judge.
Plaintiff, Kay La Parie, instituted this suit against defendant, John J. Totora, individually endeavoring to recover the sum of $125, which she paid to him on August 4, 1949, on condition that she become the Queen of a ball on January 9, 1950, sponsored by the Krewe of Carthage, a non-trading corporation, organized under the laws of this State, but that the said agreement was not fulfilled by Totora, as Captain of the Krewe of Carthage and, therefore, he is indebted to her in the aforementioned amount.
Defendant answered and admitted both the receipt of the money and the unfilled condition for which it was accepted by him acting in his capacity as Captain of the *659 Krewe of Carthage, a fact known to plaintiff and, therefore, denied that he was personally indebted to her in any sum whatsoever.
From a judgment in favor of plaintiff as prayed for, defendant prosecutes this appeal.
The record, in view of its material consideration, is embellished with more than the usual disputations, apparently because the litigants have unwittingly endeavored to convert phantasy into reality and then, in order to measure the ultimate result thereof, have used as an illusive yardstick, the prevailing medium of exchange and the corporate fiction.
In any event the record discloses that in March of 1949, plaintiff telephoned defendant, as Captain of the Krewe of Carthage and informed him that she was anxious to become a member thereof, in order that she might aspire to “being a maid” in its forthcoming ball on the night of January 9, 1950. He informed her that regular membership dues were $35 per annum, but the cost of “being a maid” was $125 per annum. She then inquired as to the cost of “being Queen” and he responded “that’s $350.00”, payable on or before October 1, 1949, and the first meeting of the organization would occur on April 7, 1949, in the Jung Hotel. Plaintiff appeared at this meeting and signed her application for membership, dated April 7, 1949, addressed to the Officers and Members of the Krewe of Carthage, Inc., and it was accepted. She then expressed to defendant her desire of “being Queen” and he stated that the organization would write her at a later date concerning this request. On April 15, 1949, the following letter was received by plaintiff:
“Our board of directors have been informed that you are desirous of participating as the Queen of the Court of the Krewe of Carthage.in their 1950 annual carnival ball which is to be held on January 9th on the large side of the Municipal Auditorium.
“The Board of directors are pleased and honored to have you in the court and wish to take this opportunity to outline in brief, just what you will be entitled to as a member of the court.
“First, your annual dues will be $350.00, which can be paid in installments, but must be paid in full by October 1, 1949. This is to cover the cost of material and making of your costume (which- will be yours after the ball) one supper dance invitation, 4 box Seats, 4 reserve seats and 40 general invitations.
“There will be a special supper dance for the 1950 court before the ball. This is for the purpose of the court to get acquainted and meet the king and queen.
“Please acknowledge receipt of this letter by dropping a post card or writing to the Krewe of Carthage, P. O. Box No. 606, New Orleans, Louisiana and if there are any points which are not entirely clear, the board of directors will be glad to explain the points in question.
“Looking forward to a very successful year with you, we remain,
“Yours very truly,
“Krewe of Carthage, Inc.
“(Signed) John J. Totora, Captain”
On May 4, 1949, the following letter was received from plaintiff by the Krewe of Carthage:
“This is to acknowledge receipt of letter of April 15.
“I would like to apologize, for the terrible delay. I meant well, but under certain circumstances, I just.couldn’t do any better.
“I am looking forward to being the 1950 queen of the Krewe of Carthage. I certainly do think it is a thrill, and a pleasure, to have such a wonderful part in your 1950- court.
“I hope it will be a most wonderful and successful year, for the KOC.
“If there is any way I can offer my services, please let me know. Don’t hesitate:
“Once again, thanks for all your kindness and understanding of my delay in acknowledging the letter.”
*660 On Sunday, August 7, 1949, plaintiff paid to defendant the sum of $125 and he issued to her the following receipt: “Kay La Parie, 3014 Delachaise Paid $125.00 on Queen for Carnival ■Ball. .Temporary receipt. Johnny Totora, Captain.” On August 8, 1949, a permanent receipt was issued to plaintiff which reads: “Received of Kay La Parie One Hundred Twenty-five dollars, balance due $225.00” and signed “Krewe of Carthage, Inc. D. Prechtel, Treas.”
Both defendant and the organization contacted plaintiff several times for the balance of $225, which was, payable on or before October 1, 1949, but were unsuccessful in their efforts. In any event, the months passed on and plaintiff’s dress as “Queen of the Ball” was being created by its dressmaker, who had given plaintiff several fittings, the last of which occurred on the morning of January 7, 1950, two days prior to the ball. It also appears that 6,000 programs were printed, at the expense of the organization, with plaintiff’s name appearing thereon as Queen, which were subsequently destroyed. On the evening of January 7, another young lady was secured by defendant “as the queen” and she wore the dress originally intended for plaintiff on the night of the ball, January 9, 1950.
Plaintiff admits that she agreed to pay the balance of $225 on or before October 1, 1949 — and that it was not paid as of January 7, 1950, the date of her last fitting by the organization’s dressmaker, but she endeavors to excuse her failure to pay the balance on the ground that the dressmaker was required to make some minor alterations to the dress and until these were complete it was unacceptable to her. Plaintiff further contends that she deposited $125 with defendant individually on condition that she become “queen of the ball” which failed to materialize and, therefore, she is entitled to the return of her money; that she dealt with defendant individually and not as a representative of the non-trading corporation Krewe of Carthage; and since the ball he had individually promised to return the $125.
Defendant, on the other hand, maintains that “if the plaintiff has any right or cause of action * * * it must be asserted against ‘The Krewe of Carthage, Incorporated’ ”, which he- represented as “Captain” in all of its agreements with plaintiff; that he promised, as Captain to return to plaintiff $125 'through the Treasury of the Krewe of Carthage, and did not intend to incur this liability individually.
The only question-posed for our consideration is one of fact, and that is, whether defendant dealt with plaintiff individually or as the representative of a corporation designated as “The Krewe of Carthage.”
In our opinion there exists not a scintilla of evidence in the record, as the foregoing facts reveal, which would indicate that defendant dealt with plaintiff in his individual capacity and not as a representative of the “Krewe of Carthage”. This fact is confirmed by plaintiff’s own admission “ * * * you knew that you were not dealing with John Totora as an individual * * * but * * * as the Captain of the Krewe of Carthage?” “Yes.”
The principle that an officer or agent acting within the scope of his authority on behalf of a corporation will not thereby incur personal liability for the obligations of the corporation, except for acts of malfeasance or criminal wrongdoing, is toó well settled to require citation. Act 250 of 1928, LSA-R.S. 12:1 et seq.
Justice Holmes once observed that the existence of a corporation is a fiction, but the significance of that fiction is that the liability of its members shall be determined as if the fiction was the truth. That fiction or artificial creation is wholly within the power of the creator, and the persons who deal with it must be taken to understand that it is so.
Assuming arguendo that defendant did, individually promise to return $125 to plaintiff which had initially -been received by the treasurer of the corporation, as evidenced by the receipt - referred to herein-above — that, in our opinion would constitute a promise to pay the debt of a third person, and to be binding upon defendant, must have been made by him in writing. See LSA-C.C. Art. 2278.
*661 For the reasons assigned the judgment appealed from is annulled, avoided and reversed and' it is now ordered that there he judgment herein in favor of the defendant dismissing plaintiff’s suit at her cost.
Reversed