Robert J. GUIDRY,

v.

BANK OF LaPLACE, Patrick Guidry, ABC Insurance Company and First National Bank of Commerce.

Civ. A. No. 89–1690.

United States District Court, E.D. Louisiana.

June 8, 1990.

Roy V. Ladner, Arthur Lemann, III, New Orleans, La., for plaintiff, Robert J. Guidry.

B. Frank Martin, John Gregory Odom, New Orleans, La., for defendants, Bank of LaPlace and Patrick Guidry.

R. Patrice Vance, Pauline F. Hardin, New Orleans, La., for defendant, First Nat. Bank of Commerce.

ROBERT F. COLLINS, District Judge.

## I. INTRODUCTION

The Court is presented with two motions to dismiss filed by three defendants. Each motion asserts several grounds for dismissal. First, defendants, Bank of LaPlace ("BOL") and Patrick Guidry ("P. Guidry"), move the Court to dismiss plaintiff's, Robert J. Guidry ("Guidry"), Complaint and First Amended Complaint (referred to collectively hereinafter as "Complaint"), pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity. Likewise, defendant, First National Bank of Commerce ("FNBC"), moves the Court to dismiss Guidry's Complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. FNBC also moves the Court to order plaintiff, pursuant to Fed.R. Civ.P. 9(b) and 12(e), to file a more definite statement of his fraud and concealment claims against FNBC. First, the Court will outline the facts relevant to both motions. The Court will then address BOL and P. Guidry's motion to dismiss. Finally, the Court will address FNBC's motions to dismiss and for a more definite statement. For the reasons given below, the Court GRANTS the motions to dismiss and DISMISSES the motion for a more definite statement as moot.

## II. FACTS

In April of 1988, Lynn Paul Martin ("Martin"), turned himself in to federal authorities and confessed his operation of a fraudulent travel company scheme conducted under the name "LPM Enterprises." Martin was indicted, and he pled guilty to federal criminal charges in connection with that scheme. See *United States v. Lynn Paul Martin*, No. 88–390 "C" (2) (E.D.La.). Guidry, one of Martin's investors, now as-

serts civil racketeering, federal and state securities fraud, and pendent fraud and negligence claims, accusing defendants herein of having knowingly and intentionally aided and abetted Martin's conduct of his travel scheme.

Guidry invested with Martin over a period of approximately three years. Guidry seeks to recover alleged losses he incurred when the purported "Ponzi" scheme, operated by Martin, collapsed in April of 1988. Guidry was allegedly left holding Martin's unpaid checks totalling over $12 million.

According to the allegations in the Complaint, Martin started the business scheme in 1982. See Complaint, ¶¶ 6–7. Martin pretended to purchase blocks of airline tickets for passengers on gambling junkets to Las Vegas hotels. See Complaint, ¶¶ 10–11. Martin allegedly represented to potential victims, such as Guidry, that they would receive a rate of return of between four and seven percent per month (between 48% and 84% per year) on the amount invested. These amounts were provided in the form of post-dated checks written to Guidry by Martin on his personal checking account. See Complaint, ¶ 10. Martin gave Guidry the post-dated checks when Guidry wrote his checks to Martin. Martin's checks to Guidry were allegedly covered by funds obtained from other investors. See Complaint, ¶ 10. Guidry alleges that he exchanged checks with Martin from August 28, 1986 through April 21, 1988. See Complaint, ¶¶ 16–17, Counts III–XI.

BOL, P. Guidry and FNBC, as well as unknown insurance companies which allegedly provide coverage for the wrongful acts asserted, were made defendants herein. Martin is not named as a defendant in this action. The specific factual allegations made against BOL and P. Guidry are that they:

(1) permitted Martin to operate a "Ponzi" and check kiting scheme out of a BOL checking account;

(2) led investors to believe that Martin was operating a legitimate business;

(3) permitted Martin to overdraw his checking account on a regular basis and for substantial amounts;

(4) manipulated Martin's checking account to extend the life span of the scheme;

(5) concealed the scheme from law enforcement and regulatory authorities; or, alternatively, consciously avoided discovery of the scheme.

*See* Complaint, ¶ 10(b).

P. Guidry, a Senior Vice President of BOL, allegedly responded to inquiries from Guidry on September 3, 1986, and at various other unspecified times, "based upon his knowledge of the legitimacy of the LPM investment contract, and led Guidry to believe that LPM was a legitimate investment." *See* Complaint, ¶¶ 5(d), 19. Guidry allegedly relied upon the representation of P. Guidry to write checks to Martin only during the period September through November of 1986. *See* Complaint, ¶ 20.

According to the allegations of the Complaint, however, the checks exchanged between Guidry and Martin in 1986 and 1987 resulted in tremendous profits to Guidry. There is no allegation that any of the post-dated checks written to Guidry by Martin at large, guaranteed rates of return were not honored until April of 1988. *See* Complaint, Counts III through XI. The only checks for which plaintiff seeks to recover damages are the nine checks that he wrote to Martin during the period of April 18 through 21, 1988. *See* Complaint, Counts III-XI. According to the Complaint, Guidry decided to write all checks to Martin after November of 1986, based upon the advice of individuals and entities other than BOL and P. Guidry. *See* Complaint, ¶¶ 51, 127, 227.

Based upon these allegations against defendants, BOL and P. Guidry, Guidry maintains that he is entitled to relief under a variety of statutes and theories. In Counts I and II, Guidry alleges that the defendants are liable for violations of the federal Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1962(c) ("RICO"), through a pattern of racketeering activity consisting of mail fraud, wire fraud, securities fraud, and interstate transportation of stolen property. Likewise, P. Guidry and BOL are also alleged to have violated Section 1962(d) of the RICO Act by conspiring to violate Section 1962(c). In Counts III through XI, P. Guidry and BOL are alleged to have violated Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act") and Rule 10b-5 promulgated thereunder. In Count XII, BOL and P. Guidry are alleged to have violated Sections 12(1) and (2) of the Securities Act of 1933 (the "1933 Act"). In Count XIII, BOL and P. Guidry are alleged to have violated the Louisiana Securities Act. In Counts XIV and XVI, BOL and P. Guidry are alleged to have aided and abetted the fraud actually committed by Martin and to have been negligent in failing to discover and prevent Martin's alleged "Ponzi" scheme.

Guidry has four allegations against FNBC. First, Guidry alleges that FNBC had a correspondent banking relationship with BOL. *See* Complaint, ¶ 5(f). Second, he alleges that FNBC advised him to buy into Martin's scheme. *See* Complaint at ¶¶ 15-16, 20, 40, 126-27, 226-27, and 361. Third, Guidry alleges that FNBC allowed him to draw on uncollected Martin funds. *See* Complaint at ¶ 179. Fourth, Guidry alleges that FNBC mailed him his monthly account statements and cancelled checks. *See* Complaint at ¶ 370(a)-(g).

From these allegations, Guidry concludes:

First NBC aided and abetted the "Ponzi" and check kiting scheme: ...

II. By using its correspondent relationship with BOL to further the goals of the scheme;

III. By concealing the scheme from law enforcement and regulatory authorities; or, alternatively,

IV. By consciously avoiding discovery of the scheme.

Complaint at ¶¶ 10(c), 433. *Accord* RICO Case Statement Items 2, 5(c) and 6(d). Guidry seeks trebled damages of $18,074,-394.00 plus interest, costs and attorney's fees from all defendants.

## III. STANDARD OF REVIEW

In considering the instant 12(b)(6) motions to dismiss, the Court is limited in "its

consideration to the facts alleged in the Complaint." *Murray v. Amoco Oil Co.,* 539 F.2d 1385, 1387 (5th Cir.1976). Although the federal rules provide for liberal pleading, it is well settled that "a complaint still·must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *In re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981), *cert. denied,* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983) (emphasis in original).

## IV. BOL AND P. GUIDRY'S MOTIONS TO DISMISS

### A. *RICO Claims (Counts I and II)*

Defendants contend that Counts I and II of the Complaint should be dismissed because Guidry alleged insufficient facts to establish a valid enterprise.· Further, defendants contend that Guidry did not allege sufficient facts to show that BOL and P. Guidry were associated with the alleged enterprise. Finally, defendants contend that plaintiff fails to state a claim upon relief can be granted because plaintiff does not sufficiently allege predicate acts which form a pattern of racketeering activity.

#### 1. RICO Enterprise

It is elemental that a RICO action cannot be maintained without a valid RICO enterprise. 18 U.S.C. § 1962(c); *Ross v. Omnibusch, Inc.,* 607 F.Supp. 835, 837 (W.D. Mich.1984); *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); an enterprise is "[c]entral to each of the subsections of Section 1962." *Old Time Enterprises, Inc. v. International Coffee Corp.,* 862 F.2d 1213, 1219.

■ An "enterprise" is defined in 18 U.S.C. § 1961(4). The definition includes organizations, such as partnerships, corporations, associations and other legal entities, as well as any group of individuals "associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise may be either a legitimate or illegitimate business, so long as it comprises an "ongoing organization, formal or informal [with] ... various associates functioning as

a continuing unit." *U.S. v. Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528.

■ The enterprise alleged here consists of "a bank account in the name of Martin, Special Account at BOL, and LPM." *See* Complaint, ¶¶ 7, 366. In the Fifth Circuit, "an inanimate object ... cannot constitute a RICO enterprise." *Elliot v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989); *Old Time Enterprises, Inc. v. International Coffee Corp.,* 862 F.2d at 1218. Thus, the question is whether a bank account is a valid RICO enterprise. The Court will first consider whether or not a bank account is an inanimate object. The definition of inanimate is "not endowed life or spirit" or "lacking consciousness or power of motion." *Webster New Collegiate Dictionary,* 579 (1977). It is clear that a bank account lacks life, spirit, consciousness or power of motion and is therefore inanimate. The definition of bank account is "a sum of money placed with a bank or banker, on deposit, by a customer, and subject to be drawn out on the latter's check." *Black's Law Dictionary,* 184 (4th Ed.1968).

The Court finds that a bank account fits into the category of inanimate objects discussed in *Old Time Enterprises, supra.* The Fifth Circuit stated that "inanimate objects, ... such as coffee, or intangible rights, such as contract rights, cannot possibly constitute a RICO 'enterprise," which must be either an individual or a 'legal entity,' such as a corporation, or an association of individuals. § 1964(4)." 862 F.2d at 1218. A bank account fits most closely into the category of inanimate objects that the Fifth Circuit called contract rights. Thus, the Court finds that a bank account is not a valid RICO enterprise and DISMISSES plaintiff's RICO claims. *See, cf., In re Cannella and E.F. Hutton & Co. Securities Litigation,* 583 F.Supp. 1388, 1426 (E.D.Pa.1984) ("No conceivable reading of the statutory definition would support a conclusion that securities accounts qualify as 'enterprises' ").

### B. *Securities Claims (Counts III–XIII)*

Plaintiff's Complaint alleges in Counts III through XIII that BOL and P. Guidry

violated the 1933 Act, the 1934 Act, and the Louisiana Securities Act through the conduct described above. Plaintiff specifically alleges securities laws violations through the issuance of postdated checks from Martin to Guidry.

The critical issue for the purpose of the securities counts of Guidry's Complaint is whether a postdated check is a security. If postdated checks are not securities, then the securities counts must be dismissed.

It is well settled that before the 1933 Act or the 1934 Act applies, "[i]t is necessary to prove that what was sold were securities under the Act." *American Grain Association & Canfield, Burch & Mancuso*, 530 F.Supp. 1339, 1342 (W.D.La.1982); *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943). It is likewise well settled that the definitions of security in the 1933 and 1934 Acts are "virtually identical" and are intended to be the same. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985); *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). Likewise, instruments which are not "securities" under federal law are not securities under Louisiana law. *Rogillio v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 448 So.2d 1340, 1346 (La.App.1984) (Commodity futures contracts are not securities under Louisiana law as they are not securities under federal law.). Having established that a security is required in this case, the Court must now define security.

### 1. What Is A Security?

The 1933 Securities Act defines a security as follows:

The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guaranty of, or warrant or right to subscribe to or purchase, any of the foregoing.

15 U.S.C. § 77b(1) (emphasis added).

The Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, defines security as follows:

The term "security" means any note, stock, treasury stock, bond debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; *but shall not include currency or any note, draft*, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10) (emphasis added).

Louisiana has a Blue Sky Law. *See* La. R.S. 51:701 *et seq.* It defines a security as follows:

(a) "Security" means any note; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; *investment contract;* voting-trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or any other mineral rights; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof); or, in general, any interest or instrument commonly known as a "security"; or any certificate of interest participation in,

temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase any of the foregoing.

(b) "Security" shall not mean: ...

(ii) *Currency*, or any note, *draft*, bill of exchange, loan participation or banker acceptance, or any other evidence of indebtedness issued by a bank other than the shares of such institution as defined in R.S. 6:251, et seq. for state banks and the preferred and common stock of national banks as defined in 12 U.S.C.A. Sections 51(a) and 51(c).

La.R.S. 51:702(15) (emphasis added).

### 2. Is A Postdated Check A Security?

Before determining whether a postdated check is a security, it is necessary to define "check." A check is "a draft drawn on a bank and payable on demand, signed by the maker or drawer, containing an unconditional promise to pay a sum certain of money to the order of the payee." *Black's Law Dictionary* at 215 (5th Ed.1979). Under Louisiana law, negotiable instruments include a "check" if it is a "draft drawn on a bank and payable on demand." *See* La. R.S. 10:3–104(2)(b). Based on the foregoing, it is clear to this Court that a check is a draft.

The 1934 Act expressly excludes drafts from the definition of securities. 15 U.S.C. § 78c(a)(10). The 1933 Act does not expressly exclude drafts. Under the 1933 Act, a draft is an exempted security. 15 U.S.C. § 77c(a)(3). The 1933 Act provides:

(a) ... this title shall not apply to any of the following classes of securities:

(3) Any note, draft ... which arises out of a current transaction ... which has a maturity at the time of issuance of not exceeding nine months...."

15 U.S.C. § 77c(a)(3). Assuming that a draft is a security, it is exempted from the 1933 Act. The Louisiana Securities Act expressly excludes drafts from the definition of security. La.R.S. 51:702(15).

Based on the foregoing, the postdated checks involved in this case are drafts. Since the checks are drafts, they are excluded by the 1934 Act and the Louisiana

Securities Act and exempted by the 1933 Act. The Court, however, notes that "[i]t is not bound by legal formalisms, but instead take[s] account of the economics of the transaction...." *Tcherepnin v. Knight, supra.* Although this case does not involve notes, the Court must recognize the Supreme Court's recent decision in *Reves v. Ernst & Young,* —— U.S. ——, 110 S.Ct. 945, 108 L.Ed.2d 47 (U.S.1990).

In *Reves,* the Court held that notes are not per se securities, but must be examined using the "family resemblance" test. *Reves, supra* at 951. Under the "family resemblance" test, "A note is presumed to be a security, and that presumption may be rebutted only by a showing that the note bears a strong resemblance ... to one of the enumerated categories of instrument." *Id.* The *Reves* court provided four factors to determine whether a note satisfies the family resemblance test. The factors are as follows: (1) the motivations that prompted the buyer and seller to enter into the transaction; (2) whether there is a common plan of distribution for speculation or investment; (3) the reasonable expectations of the investing public; and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument and thus renders the application of the Securities Acts unnecessary. *Id.* Although the instruments in this case are post-dated checks, the Court will nevertheless apply the "family resemblance" test to determine whether the checks are securities.

First, the checks were issued in the context of a loan with one check representing the loan principal and the other check representing a fixed rate of interest on the loan principal. The checks issued by Guidry to Martin were issued to correct cash flow problems. Since Guidry could not expect the checks to generate a profit—profit generation was impossible due to the fixed interest rate—and the money given to Martin facilitated the purchase of alleged airline tickets as well as corrected Martin's cash flow difficulties, the checks here fail the first prong of the family resemblance test. *Reves, supra.*

Second, there was not a plan of distribution that led to common trading for speculation or investment. *Id.* Thus, the checks do not satisfy *Reves'* second prong. Third, as noted above, the checks were not commonly traded. Thus, it is unnecessary and impossible to examine the reasonable expectation of the investing public. Assuming that Guidry and others like him are considered a part of the investing public, the checks here do not satisfy the third prong of the family resemblance test. The public's only expectation could be that of loan repayment with a fixed—albeit high—rate of interest. The Court finds that this does not satisfy *Reves.* Finally, the Court must determine whether some other factor reduces the risk of the checks at issue here. Although the fraud perpetrated by Martin is not covered by any regulatory scheme, the holder of a worthless check has a right—albeit a hollow one in this case—under Louisiana law to pursue an action against the issuer.

■ In sum, even if the checks here are considered notes, the Court finds that the "family resemblance" test is not satisfied. Thus, the Court finds that the checks are not securities. Finally, the Court will analyze the checks to determine whether they are investment contracts and therefore covered by the Securities Laws.

The definition of an "investment contract" was first set forth in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), as follows:

> "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

The Fifth Circuit has broken this test down into three elements: (1) a money investment; (2) in a common enterprise; and (3) with profits of the enterprise to be derived solely from the efforts of the promoter or a third party. *SEC v. Koscot Interplanetary, Inc.,* 497 F.2d 473, 477 (5th Cir.1974).

■ "Profits" means "a participation in earnings resulting from the use of the investors' funds." *B. Rosenberg & Sons, Inc. v. St. James Sugar Cooperative, Inc.,* 447 F.Supp. 1, 4 (E.D.La.1976). "Profits" also means "either capital appreciation resulting from the development of the initial investment ... or a participation in earnings resulting from the use of investors' funds...." *Howey,* 328 U.S. at 300, 66 S.Ct. at 1103; *United Housing Foundation v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

In this case, Guidry did not expect capital appreciation from the post-dated checks he received and did not participate in earnings resulting from the use of his funds, because the checks only provided a fixed rate of return. In the Fifth Circuit, a plaintiff does not have a "reasonable expectation of profits" under the *Howey* test, when plaintiff only expects "repayments of the principal it loaned plus interest at a fixed rate ... no different than that expected in an ordinary commercial transaction." *United American Bank of Nashville v. Gunter,* 620 F.2d 1108, 1118 (5th Cir.1980). The Court finds that the lack of profits under the *Howey* test is determinative of the checks' status. The checks are not securities because profits, as defined by *Howey,* are absent.

### 3. Conclusion

Finding that postdated checks are not securities, the transaction here did not generate "profits" and that the "family resemblance" test is not satisfied, the Court DISMISSES Guidry's securities fraud claims.

### C. *Fraud Claims (Count XIV)*

■ BOL and P. Guidry move the Court to dismiss Guidry's pendent state law claims for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b). Having dismissed Guidry's securities fraud claims above, the Court does not address BOL and P. Guidry's motions to dismiss those counts for failure to plead fraud with particularity. As to Guidry's state law claims, the Court finds that Guidry does not satisfy the requirements of Fed.R. Civ.P. 9(b). Guidry amended his Complaint once but did not add any additional particularity to his fraud claims against BOL and

P. Guidry. The fraud claims against BOL and P. Guidry are set forth in generalized conclusions and are lacking in factual specificity. *See* Complaint, ¶ 431. Fed.R.Civ.P. 9(b) and (f) provide:

(b) In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

(f) For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter.

In the Fifth Circuit, allegations of fraud must conform with the strictures of Rule 9, Fed.R.Civ.P. The Fifth Circuit has stated that "[i]t is well settled that fraud must be pleaded with particularity." *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 877 n. 24 (5th Cir.1984); *accord, Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172 (5th Cir.1968); *Massey–Ferguson, Inc. v. Bent Equipment Co.*, 283 F.2d 12 (5th Cir.1960); *Miami Beach Fed. Savings & Loan Assoc. v. Callander*, 256 F.2d 410 (5th Cir.1958); *Texas Water Supply Corp. v. Reconstruction Finance Corp.*, 204 F.2d 190 (5th Cir.1953); *Rubens v. Ellis*, 202 F.2d 415 (5th Cir. 1953). In *Rubens*, there were allegations that a prior court decree had been obtained with "gross misrepresentation and deceit." The Court stated that the "categorical assertion of fraud," amounting only to a conclusion, was wholly insufficient under Fed. R.Civ.P. 9(b). *Rubens*, 202 F.2d at 417. BOL and P. Guidry argue that the present Complaint's assertions of fraud are wholly insufficient as well.

The purposes of Rule 9(b) are threefold: (1) to ensure that the plaintiff has investigated and reasonably believes a fraud has occurred; (2) to provide adequate notice to defendants so that they can respond to the plaintiff's claims; and (3) to protect the reputation of defendants. *See, Kronfeld v. First Jersey National Bank*, 638 F.Supp. 1454, 1463 (D.N.J.1986). An additional purpose of Fed.R.Civ.P. 9(b) is to preclude litigants from filing baseless complaints and then "attempting to discover unknown wrongs." *D & G Enterprises v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 574 F.Supp. 263, 266 (N.D.Ill. 1983); *Bruss v. Allnet Communications Services, Inc.*, 606 F.Supp. 401, 405 (N.D. Ill.1985).

In order to satisfy the requirements of Fed.R.Civ.P. 9(b), Guidry must allege the "time, place and contents of the false representations [or omissions], as well as the identity of the person making the misrepresentations [or omissions] and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982), *aff'd in relevant part en banc*, 710 F.2d 1361 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986); *Brown v. Chaffee*, 612 F.2d 497 (10th Cir. 1979); *Gottreich v. San Francisco Investment Corp.* 552 F.2d 866 (9th Cir.1977); *Seligson v. Plum Tree, Inc.*, 361 F.Supp. 748, 756 (E.D.Pa.1973); 2A *Moore's Federal Practice*, ¶ 9.03 at 9–20 through 24 (2d ed. 1985). The requirements for satisfactory particularity under Rule 9(b) were succinctly listed in *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415 (S.D.N.Y.1978), as follows:

In summary, whether the averments are upon "information and belief" or upon actual knowledge, the plaintiffs must specify: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."

78 F.R.D. at 420–21. *See Elster v. Alexander*, 75 F.R.D. 458, 461 (N.D.Ga.1977); *see also, Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421, 1429 (S.D.N.Y.1985); *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 930 (N.D.Ill.1985).

Guidry's Complaint does not identify which specific representations BOL and P. Guidry were aware of, when they became aware, or how each defendant became so aware. The Complaint does not allege any facts to establish *how* BOL and P. Guidry permitted Martin to operate his Ponzi scheme out of his BOL account. *See*, Complaint, ¶ 10(b). There is likewise no allegation, other than paragraph 19, as to *how* these defendants led anyone to believe that Martin operated a legitimate business, who the other alleged investors were, what, if anything, was said or written by BOL or P. Guidry to create such a belief, or when such acts were done. *See*, Complaint, ¶ 10(b).

Guidry further fails to state a single instance when BOL and P. Guidry *knowingly* permitted Martin to overdraw any particular bank account, or the date, or amount, of any such overdraft. There are no factual allegations of *how* BOL of P. Guidry came to know of Martin's scheme or manipulated Martin's checking account. Similarly, no facts are presented to establish how or when BOL and P. Guidry concealed Martin's scheme from law enforcement or regulatory authorities, or consciously avoided discovery of Martin's scheme. *See*, Complaint, ¶ 10(b). Finally, there is no allegation in the Complaint that BOL or P. Guidry intended to, or did in fact, realize any financial benefit from Martin's scheme to defraud Guidry, or that these defendants had any motive to assist Martin.

Guidry is required by Rule 9(b) to specifically allege facts to show the fraudulent intent, acts and omissions of each defendant, as well as an explanation of the duty owed by each defendant to each plaintiff. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979). Guidry has not alleged any facts in his Complaint to show that BOL or P. Guidry intended to defraud Guidry or owed him a duty. In fact, the Complaint lists allegations against the "defendants" and the "defendants and others." In this respect, the Fifth Circuit has held that "general allegations, which do not state with particularity what representations each defendant made, do not meet this [particularity] requirement." *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir.1986).

The Fifth Circuit in *Unimobil* relied in large part upon the recent decision of *Fine Iron Works v. Louisiana World Exposition, Inc., et al.*, 472 So.2d 201 (La.App. 4th Cir.1985), *writ denied*, 477 So.2d 104 (La. 1985). In *Fine Iron Works*, the Louisiana appellate court ordered the dismissal of a lawsuit alleging fraud because, as in the instant case, "there are no specific allegations of fraud on [defendant's] part." *Fine Iron Works*, 472 So.2d at 203. In sum, Guidry has failed to allege in both his Complaint and Amended Complaint the "who, what, when, and how" particularity required by Rule 9(b). Thus, the Court GRANTS defendants' motions and DISMISSES plaintiff's pendent state law fraud claims.

### D. *Negligence Claims (Count XVI)*

#### 1. *Negligence Claim Against BOL*

Guidry has asserted a cause of action for negligence against BOL in Count XVI of the Complaint. Guidry alleges the existence of a duty on the part of BOL to discover and prevent Martin's Ponzi scheme. *See*, Complaint, ¶ 435. A negligence action under Louisiana law requires the plaintiff to allege facts which establish each of the following elements:

1. the conduct in question was a cause-in-fact of the resulting harm;

2. the defendant owed the plaintiff a duty to protect the plaintiff from the type of harm arising from the conduct;

3. the defendant violated the duty owed; and

4. the defendant's duty is within the scope of the risk.

*Mart v. Hill*, 505 So.2d 1120 (La.1987); *Hill v. Lundin and Associates, Inc.*, 260 La. 542, 256 So.2d 620 (1972). The existence of a duty is a question of law. *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La.1984).

Guidry has not alleged facts to establish when or how BOL knew or should have

known of the Ponzi scheme or failed to discover and/or prevent the scheme. Guidry has also failed to allege how BOL's acts and/or failures to act are a cause-in-fact of the plaintiff's alleged damage. Finally, no duty was owed by BOL to discover or prevent the Ponzi scheme, as a matter of law.

The Court finds *E.F. Hutton Mortgage Corp. v. Equitable Bank, N.A.,* 678 F.Supp. 567 (D.Md.1988), persuasive on the propriety of defendants' motions. In *Hutton,* the Court held that the defendant, Equitable Bank, did not owe a duty to E.F. Hutton Mortgage Corporation, a third-party, non-customer, to investigate and/or disclose the improper conduct of FAMCO, one of Equitable Bank's customers. *Hutton,* 678 F.Supp. at 583. FAMCO, a mortgage corporation, maintained various bank accounts with Equitable Bank and obtained financing from Equitable Bank over a period of years. *Hutton,* 678 F.Supp. at 571. During the same time period, FAMCO also obtained financing from Hutton. *Hutton,* 678 F.Supp. at 571–72. FAMCO engaged in a series of irregular and fraudulent transactions. *Hutton,* 678 F.Supp. at 572. As a result of FAMCO's practices, both Equitable Bank and Hutton suffered substantial losses. *Hutton,* 678 F.Supp. at 570.

Both Hutton and Equitable Bank had suspicions about the legitimacy of FAMCO's business. *Hutton,* 678 F.Supp. at 573. FAMCO frequently transferred money to and from various accounts at Equitable Bank resulting in overdrafts in some of its accounts. *Hutton,* 678 F.Supp. at 575. Hutton was not a customer of Equitable Bank, except for an account labeled "FAM Mortgage Servicing, Inc., Custodial Account for E.F. Hutton." *Hutton,* 678 F.Supp. at 575. Thus, there was a tangential business relationship involved in *Hutton.* In this case, Guidry did not maintain a bank account at BOL.

Hutton alleged that Equitable Bank was negligent in failing to discover FAMCO's fraud or report its suspicions of FAMCO's conduct. *Hutton,* 678 F.Supp. at 573, 583. The Court properly found that Equitable Bank and Hutton had no relationship, contractual or otherwise. *Hutton,* 678 F.Supp. at 577. The Court found that even if Equitable Bank knew of or suspected the fraudulent scheme, Equitable Bank had no duty to disclose such knowledge or suspicions to Hutton. *Hutton,* 678 F.Supp. at 577 and 579. Based on the absence of any duty to disclose facts known to the bank regarding FAMCO's illegal activities, the Court refused to impose a duty on Equitable Bank to detect the wrongdoings of its customer. *Hutton,* 678 F.Supp. at 583. The Court then dismissed Hutton's negligence claim against Equitable Bank. *Hutton,* 678 F.Supp. at 583.

■ The *Hutton* Court also held that the bank's "failure to act was not a proximate cause of the substantial losses suffered by plaintiff Hutton." *Hutton,* 678 F.Supp. at 583. Similarly, the Court finds here that the alleged failure of BOL or P. Guidry to act is not a proximate cause of Guidry's purported losses.

■ The claims in this case are nearly identical to those in *Hutton.* As in *Hutton,* Guidry was not a customer of the defendant bank. Moreover, BOL's connection with Martin was limited to the checking account maintained by Martin. Martin also utilized his account at BOL to further his illegal activity, just as FAMCO used the financial services and accounts of Equitable Bank. Based on *Hutton,* BOL owed no duty to Guidry to discover and prevent the Ponzi scheme perpetrated by BOL's customer.

More importantly, it is well established Louisiana law that a bank, such as BOL, owes absolutely no duty, fiduciary or otherwise, towards third persons with whom a BOL customer does business. *See, Busby v. Parish National Bank,* 464 So.2d 374, 378–79 (La.App. 1st Cir.), *writ denied,* 467 So.2d 1132 (La.1985); *Strother v. National American Bank,* 384 So.2d 592, 593 (La. App. 4th Cir.1980); *Wilson v. King,* 165 So.2d 70, 72 (La.App. 4th Cir.1964); *Miller v. Bank of New Orleans,* 426 So.2d 1382, 1383 (La.App. 4th Cir.1983) (bank deposit creates debtor-creditor relationship). No fiduciary or other legal duty was imposed

upon a bank that promised to assist the plaintiffs to obtain a loan, which lulled the plaintiffs into a false sense of security. *Busby*, 464 So.2d at 378–79.

The *Strother* Court held that a bank customer does not have an action against a bank for offenses or quasi-offenses, such as fraud or negligent misrepresentation, concerning ordinary banking business:

> [T]he relationship between a bank and its customers, in the absence of specific statutes to the contrary, is not covered by the rules applicable to offenses and quasi-offenses. As between a bank and its depositor, the relationship is covered by contract.

*Strother*, 384 So.2d at 593.

In this case, Guidry was not a depositor at BOL but was merely a business associate of a depositor at BOL. The Louisiana Supreme Court has held that banks do not have a duty to third parties to investigate a customer's underlying transactions, because that "would result in an unreasonable burden upon, and disruption of, regular and normal banking transactions." *Shreveport Production Credit Association v. Bank of Commerce*, 405 So.2d 842, 846 (La.1981). The *Bank of Commerce* Court expressly held that the defendant bank "had no duty to inquire into the source of the auction checks, nor the purpose for which they were deposited." *Bank of Commerce*, 405 So.2d at 842–46. Consequently, the Court finds that BOL also had no duty to inquire into Martin's business affairs, or the purpose of the checks deposited into his account. Hence, the Court DISMISSES Guidry's claim against BOL for negligence.

2. Negligence Claim Against P. Guidry

In Count XVI of the Complaint, plaintiff also asserts a cause of action against P. Guidry for negligence. Guidry alleges that P. Guidry knew or should have known of Martin's Ponzi scheme and that P. Guidry owed a duty to him because of BOL's position. P. Guidry purportedly acted below the minimum standard of care to be exercised by a banking institution in failing to discover and prevent the purported Ponzi scheme. *See*, Complaint, ¶ 435.

P. Guidry moves to dismiss plaintiff's negligence claims against him for failure to state a claim upon which relief may be granted. Under Louisiana law, directors and officers of a corporation or bank, such as P. Guidry, do not owe a duty, fiduciary or otherwise, to third parties, such as the plaintiff herein. The Fifth Circuit has recently reaffirmed that Louisiana law does not provide third parties with a cause of action against directors and officers for gross negligence, mismanagement or, breach of fiduciary duty, or for debts of the corporation. *Louisiana World Exposition, Inc. v. Federal Insurance Co.*, 858 F.2d 233, 239–40 (5th Cir.1988).

The Fifth Circuit has previously recognized the principle that corporate directors and officers owe no duties to third parties and cannot be found liable to third parties for their negligent acts and omissions in a commercial context. *See, Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 215–17 (5th Cir.1986). P. Guidry, as an officer of BOL, only owed a duty of care to BOL, not to third parties such as the plaintiff herein. *Unimobil*, 797 F.2d at 215–17.

"The only exception to the general rule insulating corporate officers and directors from liability for corporate debts is where fraud is alleged." *Fine Iron Works v. Louisiana World Exposition, Inc.*, 472 So.2d 201, 203 (La.App. 4th Cir.), *writ denied*, 477 So.2d 104 (La.1985); *Dutton & Vaughan, Inc. v. Spurney*, 496 So.2d 1126, 1128 (La.App. 4th Cir.1986), *writ denied*, 501 So.2d 208 (La.1987) ("The tort of negligent misrepresentation is not an exception to the general rule that corporate officers are not personally liable for debts of the corporation."); *accord, City Stores Co. v. NEI Corp.*, 357 So.2d 1364 (La.App. 4th Cir.1978); *see, e.g., L.L. Ridgway Co. v. Marks*, 146 So.2d 61, 63 (La.App. 4th Cir. 1962) (officer not liable for corporate open account debt); *Johnson v. Kinchen*, 160 So.2d 296, 299 (La.App. 1st Cir.1964). Having dismissed plaintiff's fraud allegations against P. Guidry, plaintiff's negligence claims must be DISMISSED. Assuming that plaintiff had stated a claim against P. Guidry for fraud, plaintiff still has no

cause of action against P. Guidry for negligence.

The Louisiana Fourth Circuit in *Fine Iron Works* held that corporate officers and directors are insulated from liability for corporate debts or wrongdoing where, as this case, there are no specific allegations of fraud against the individual defendants. *Fine Iron Works,* 472 So.2d at 203. In holding that individual officers and directors did not owe a personal duty to third parties, the *Fine Iron Works* Court held that "C.C. art. 437 and R.S. 12:226 would be meaningless if officers and directors were said to have a personal duty to a specific creditor...." *Fine Iron Works,* 472 So.2d at 203. P. Guidry did not owe plaintiff any duty to investigate Martin, discover Martin's Ponzi scheme, or report it to the plaintiff.

The Court finds that the decisions discussed above are well-grounded in Louisiana's public policy in favor of limiting the personal liability of directors and officers through the corporate structure. *See, Texas Industries, Inc. v. Dupuy and Dupuy Development, Inc.,* 227 So.2d 265, 269 (La. App. 2d Cir.1969); *Kingsman Enterprises, Inc. v. Bakerfield Electric Co., Inc.,* 339 So.2d 1280 (La.App. 1st Cir.1976). Louisiana courts have long held that corporate officers and directors cannot be held liable to outsiders for negligent acts or omissions committed in their capacities as corporate representatives. *See LaParie v. Totora,* 62 So.2d 658, 660 (La.App.1953) ("The principle that an officer or agent acting within the scope of his authority on behalf of the corporation will not thereby incur personal liability for the obligations of the corporation ... is too well settled to require citation."); *Automatic Coin Enterprises, Inc. v. Vend–Tronics, Inc.,* 433 So.2d 766 (La. App. 5th Cir.), *writ denied,* 440 So.2d 756 (La.1983); *Dolese Concrete Co. v. Tessitore,* 357 So.2d 869, 870 (La.App. 1st Cir.), *writ denied,* 359 So.2d 623 (La.1978); *Gray v. Preferred Properties, Inc.,* 343 So.2d 1087 (La.App. 4th Cir.1976); *Altex Ready–Mixed Concrete Corp. v. Employer's Commercial Union Insurance Co.,* 308 So.2d 889 (La.App. 1st Cir.), *writ denied,* 312 So.2d 872 (La.1975); *City Stores,* 357 So.2d at 1366; *Smith v. Moore,* 347 So.2d 316, 318 (La.App. 4th Cir.1977).

The Louisiana Supreme Court has also held that corporate and bank officers and directors do not owe a fiduciary duty to third parties and cannot be held liable for negligence or omission of duty to third parties for harm resulting from acts done on behalf of that entity or its shareholders. *Allen v. Cochran,* 160 La. 425, 107 So. 292 (1926); *Wirth v. Albert,* 174 La. 373, 141 So. 1 (1932). In *Wirth v. Albert,* the Louisiana Supreme Court held that corporate officers who are guilty of misfeasance or nonfeasance are only responsible to the corporation itself, and that "a creditor of a corporation has no right of action against the corporation's agents for gross negligence or maladministration of corporate affairs or omission of duty." *Wirth,* 141 So. at 4. *Wirth* was subsequently reaffirmed in *Bacher v. Albert,* 180 La. 108, 156 So. 191 (1934).

In the recent case of *Bush v. Fidelity and Deposit Company of Maryland,* 516 So.2d 1199, 1201 (La.App. 2d Cir.1987), the Court refused to pierce the corporate veil to impose liability upon a bank officer for claims of fraud, breach of fiduciary duty, lack of good faith in the bank's dealings with the plaintiffs, duress, economic coercion, and defamation. The *Bush* Court refused to impose liability upon the individual bank officer because he had not "personally bound himself in any respect to plaintiff or exceeded his authority as an officer or representative of the bank." *Bush,* 516 So.2d at 1201. As in this case, P. Guidry was not shown to have acted in any capacity with respect to plaintiff, other than as an officer and representative of the bank. Under such circumstances, the bank officer "cannot be personally responsible to plaintiff for the conduct of the bank...." *Bush,* 516 So.2d at 1201.

The Court finds that *Bush* is applicable here, because plaintiff has not alleged that P. Guidry exceeded his authority as a BOL officer or representative, or that P. Guidry acted in any capacity, other than as a BOL officer. Thus, the Court DISMISSES plaintiff's claim of negligence against P. Guidry.

Finding that plaintiff's allegations against FNBC are identical in substance to his claims against BOL, the Court DISMISSES FNBC's Motion for Definite Statement as MOOT. For the reasons given above with respect to BOL's Motion to Dismiss Guidry's fraud and negligence claims, the Court DISMISSES plaintiff's fraud and negligence claims against FNBC.

## V. CONCLUSION

In sum, the Court DISMISSES Counts I and II of plaintiff's Complaint for failing to allege a valid RICO enterprise. The Court finds that a bank account is not a RICO enterprise. The Court DISMISSES Counts III through XIII of plaintiff's Complaint for failing to allege the existence of a security. The Court finds that a postdated check is not a security. The Court DISMISSES Counts XIV and XV for failing to plead fraud with particularity. The Court finds that plaintiff's Complaint and Amended Complaint do not satisfy the "who, what, when, where and how" requirements of Fed.R.Civ.P. 9(b). Finally, the Court DISMISSES Counts XVI and XVII for failing to allege a negligence duty of care. The Court finds that banks and their officers do not owe a negligence duty of care to third party, non-customers of their banks.