Sosman, J.
Plaintiff Elkin McCallum filed the present action complaining that the negligence of defendant Andover Bank enabled defendant Nicholas Rizzo to divert funds from the Tsongas Committee, to which McCallum had loaned funds. The Bank has moved for summary judgment, arguing that the Bank owed no duty to McCallum, that it breached no duty, and that its conduct was not a proximate cause of McCallum’s injury. For the following reasons, the Bank’s motion is ALLOWED.
Facts
The undisputed facts are as follows:
Defendant Nicholas Rizzo was the chief fund raiser and national finance committee chairman for the Tsongas campaign for the Democratic Party presidential nomination. The Tsongas Committee was formed as an unincorporated association in early 1991.
On March 8, 1991, Rizzo opened an account at Andover Bank in the name of “The Tsongas Committee.” Rizzo set up the account with himself as the sole signatory. At the time, Rizzo had other accounts at the Bank. The Bank allowed Rizzo to open the Tsongas Committee account without requiring him to produce any verification that he had the authority from the Tsongas Committee to transact business or manage such an account on behalf of the Committee.
In late April or early May 1991, Senator Tsongas officially announced his presidential candidacy. On June 18, 1991, the Tsongas Committee was incorporated in Massachusetts.
On August 12, 1991, Rizzo met with McCallum to solicit financial support for the Tsongas campaign. Rizzo asked McCallum to loan the Tsongas Committee $100,000 for “exploratory” activities,[1] and promised McCallum that the loan would be repaid within a few months. The next day, McCallum wrote a check for $100,000 made out to the Tsongas Committee and gave it to Rizzo. On August 13, 1991, Rizzo deposited the check into the Tsongas Committee account at the Andover Bank.
In the fall of 1991, McCallum agreed to make a further loan to the Tsongas campaign. On October 12, 1991, McCallum wrote a check in the amount of $50,000 to the Tsongas Committee and gave it to Rizzo. Rizzo deposited that check into the Tsongas Committee account at Andover Bank.
Rizzo proceeded to withdraw funds from the Tsongas Committee account and use them for his own purposes. In September 1993, Rizzo was convicted of embezzlement and misuse of campaign funds.
To date, the Tsongas Committee has not paid back the loans from McCallum. At no time has McCallum been a customer or depositor of Andover Bank.
Discussion
McCallum contends that Andover Bank owed a duty to contributors to the Tsongas campaign to exercise due care in the opening and handling of the Tsongas Committee account. He then contends that the Bank breached that duty when it allowed Rizzo to open an account in the name of the Tsongas Committee, with Rizzo as sole signatory, without verifying that he had the requisite authority to do so. As a result of this alleged breach, McCallum claims that Rizzo was able to embezzle the funds and he, McCallum, has not been repaid the loans as promised.
To make out his negligence claim, plaintiff must first establish that the Bank owed a duly to him. Although there is no Massachusetts law on point, there is an abundance of precedent from other jurisdictions holding that a bank owes no duty of care to third parties who are not bank customers. See Guidry v. Bank of LaPlace, 740 F.Supp. 1208, 1218-19 (E.D. La 1990), rev’d in part, 954 F.2d 278 (5th Cir. 1992); E.F. Hutton Mortgage Co. v. Equitable Bank, N.A., 678 F.Supp. 567, 579 (D.Md. 1988); Chicago Title Insurance Co. v. California Canadian Bank, 174 Cal. App.3d 1142, 1158-59 (1986); Portage Aluminum Co. v. Kentwood National Bank, 307 N.W.2d 761, 764-65 (Mich. 1981); Pennsylvania National Turf Club Inc. v. Bank of West Jersey, 385 A.2d 932,936 (N.J. 1978). Under these cases, a bank’s failure to investigate a customer’s suspicious activity, or failure to disclose suspicious activity to a third party, does not give rise to liability to the third party who is injured by the customer’s fraud. The mere fact that a bank account can be used in the course of perpetrating a fraud does not mean that banks have a duty to persons other than their own customers. To the contrary, the duty is owed exclusively to the customer, not to the persons with whom the customer has dealings.
Plaintiff points to cases outside the banking context where the law has imposed a duty to use reasonable care to prevent harm to another caused by a third person. See A.L. v. Commonwealth, 402 Mass. 234, 241 (1988) (probation officer had duty to victim of child *398 molester on probation); Irwin v. Town of Ware, 392 Mass. 745, 756 (1984) (police officer who failed to take drunk driver into custody had duly to victim). With regard to liability for pecuniary losses in the commercial context, plaintiff points to Fleet National Bank v. Gloucester Corp., No. 92-11812-REK (D.Mass. Aug. 8, 1994), in which the Magistrate Judge analyzed the circumstances in which accountants owe a duty to persons other than their immediate clients.
After a thorough review of related Massachusetts precedent, the court in Fleet National Bank identified “four guiding principles” for determining whether such a duty exists: 1) the defendant was “hired to perform a particular task,” 2) the performance of the task was for the benefit of either a particular, known person or of “someone in a well-defined class of which the plaintiff was a member,” 3) plaintiff had a reasonable expectation that the task would be performed in such a manner that harm to him would be avoided, and 4) defendant must have known or foreseen “that the plaintiff or someone in the plaintiffs position, would be harmed in the manner and to the extent that the plaintiff was harmed.” Slip op. at 15-16. The purpose of these “guidelines” was to avoid the problem of imposing on an accountant “unlimited liability to an indeterminate class,” which the Magistrate Judge characterized as an “abiding concern” in all such cases. Id., at 9, 15.
Application of these principles to the present case does not avail McCallum in his attempt to impose a duly on Andover Bank. The first criterion is met — An-dover Bank was hired to perform a particular task [Le., to maintain the accounts of the Tsongas Committee). The third criterion could also be met, as McCallum could reasonably expect that the bank handling the Tsongas Committee’s account would do so properly.
However, the second factor identified in Fleet National Bank (that the performance of the task be for the benefit of a particular known person or a well-defined class of persons that included plaintiff) has not been established. The maintenance of the Tsongas Committee’s accounts was not intended to benefit persons who loaned or contributed funds to the campaign. Nor was it for the benefit of persons who did business with the campaign. The only person or entiiy who was to benefit from the maintenance of the account was the Tsongas Committee itself. To treat the account as for the “benefit” of all lenders and contributors to the campaign, or all creditors of the campaign, is contrary to the normal understanding of what a bank account is for.
Nor would McCallum be part of a “well-defined class” of persons. Rather, he would be one of an innumerable class of Tsongas supporters and contributors, or one of a similarly innumerable class of creditors. Assuming that Rizzo’s embezzlement of funds has now rendered the Tsongas Committee unable to pay all its debts, every remaining creditor of that Committee could now claim to have been damaged by the Bank’s alleged negligence in allowing Rizzo to open the account. This is precisely the kind of unlimited liability to an unlimited class of persons that the application of the factors outlined in Fleet National Bank is designed to prevent.
Finally, on the fourth guideline set forth in Fleet National Bank, the Bank could not have known or foreseen that any contributor would be harmed “in the manner and to the extent” that McCallum claims to have been harmed. Given the $1,000 per contributor limit on contributions and loans to the Tsongas Committee, the Bank would have no reason to foresee that an individual contributor/lender would make illegal loans to the Committee totalling $150,000.
Thus, while the analysis outlined in Fleet National Bank is a sound approach for identifying those rare instances in which a duty might be owed to some third party other than the bank’s own customer, it does not suggest that any duty was owed to McCallum. The facts of McCallum’s case, viewed in the light most favorable to him, fail to satisfy two of the four guidelines set forth in Fleet National Bank.[2] In the absence of any duty owed to him, McCallum can not make out a critical element of his negligence claim against the Bank, and the Bank is entitled to summary judgment in its favor.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendant Andover Bank, Inc.

 Contributions (including loans) to candidates for federal office may not exceed $1,000 from any one contributor. 2 U.S.C. §441a. Contributions to “exploratory committees” prior to an official announcement of candidacy may be for higher amounts. 11 CFR §§100.7, 101.3. Since the official announcement of Tsongas’ candidacy had occurred back in the spring of 1991, an August 1991 contribution in excess of the $1,000 limit could no longer be treated as a contribution to an “exploratory committee." McCallum contends that Rizzo advised him that this loan was legal under federal campaign finance laws. It was not in fact legal.

Analysis of these principles might well give rise to a duty owed by the Bank to the Tsongas Committee, the known, named entity for whose benefit the account was ostensibly being opened and maintained. The court is advised that a separate action has been brought by the Tsongas Committee against the Bank. Assuming (without deciding) that the Committee established that there was a duty owed to it, that the Bank breached that duty, and that the breach proximately caused damage to the Committee, the Bank would be obligated to make the Tsongas Committee whole for the funds embezzled by Rizzo. McCallum is entitled to press his claims for payment against the Committee itself, and, along with other creditors of the Committee, would potentially benefit from the Committee’s action against the Bank. Indeed, in an appropriate action, McCallum could seek to reach the alleged debt from the Bank to the Committee and apply it to the repayment of his loan. There is no need to create a separate duty owed directly to McCallum.