472 So.2d 201 (1985)
FINE IRON WORKS
v.
LOUISIANA WORLD EXPOSITION, INC., Petr L. Spurney, Martin Katz, Norman Kerth, Charles Teamer, Floyd Lewis.
No. C 3652.
Court of Appeal of Louisiana, Fourth Circuit.
June 12, 1985.
Rehearing Denied July 26, 1985.
*202 Karl M. Hansen, Jr., Anthony V. Ligi, Jr., Metairie, for plaintiff-respondent.
Eugene R. Preaus, Brent B. Barriere, New Orleans, for defendants-relators.
Before REDMANN, C.J., and SCHOTT and BARRY, JJ.
SCHOTT, Judge.
This is a suit for the balance of a contract price by respondent, Fine Iron Works, against Louisiana World Exposition, Inc. (LWE) a nonprofit corporation organized pursuant to LSA-RS 12:201 et seq. and relators, a number of its individual officers and directors. These individuals filed a peremptory exception of no cause of action based on the contention that respondent, whose contract was with LWE, failed to allege facts to support a legal claim against them. The trial court overruled these exceptions, and we granted certiorari in order to consider the validity of this judgment. The issue is whether relators had some special fiduciary relationship to respondent to see to it that a grant, given to LWE for the specific purpose of funding the work respondent was doing, was paid to respondent by LWE, in default of which relators are individually liable for LWE's debt to respondent.
In considering an exception of no cause of action the court must consider only the factual allegations of the petition and any documents attached to and made part thereof. Furthermore, these factual allegations are accepted as true for purpose of testing the legal sufficiency of the petition. In its petition as amended respondent alleged the following facts:
Pursuant to a contract between respondent and LWE dated February 10, 1984 respondent constructed three oases for LWE at its Fair. Out of the total contract price of $285,099 a balance of $107,439 was owed to respondent. This construction was sponsored for LWE by GTE Service Corporation pursuant to a contract between these parties dated March 16, 1984. Section 2 of the contract entitled "Disbursement of the Budget" provided as follows:

The Budget shall be disbursed by LWE as follows:
 a. Construction costs $ 85,000.00 per oasis
 b. Utilities 10,000.00 per oasis
 c. Signage
 (1) signs 22,000.00 per oasis
 (2) freight 3,000.00 per oasis
 (3) installation 5,000.00 per oasis
 ___________
 SUBTOTAL $ 125,000.00 per oasis
 TOTAL $ 375,000.00 [three (3) oases]

Respondent relied upon the existence and availability of this grant to pay for the work "and the representations of [relators] that said funds were available to pay all amounts due for said construction." Relators were or should have been aware that this grant was made specifically for the work done by respondent, "said grant constituting a trust for the benefit of [respondent] the existence of which [respondent] relied upon."
Relators were designated by LWE to disburse the grant to respondent "but despite knowledge of the specific purpose for which said grant was made, [respondent's] reliance on the existence thereof, and with *203 knowledge of the otherwise insolvent condition of LWE, [relators] depleted the grant by wrongfully authorizing the diversion and misapplication of the funds for purposes other than those for which they were specifically designated." This conduct by relators constituted a breach of duty owed to respondent; it violated relators' fiduciary obligation to respondent; and it constituted a legal fraud upon respondent.
As a general rule officers and directors of a corporation have no personal liability for corporate debts. LSA-C.C. Art. 437. In a nonprofit corporation the relation of directors and officers to the corporation and their liability is set out in R.S. 12:226 as follows:
A. Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and its members, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions.
* * * * * *
D. If any unlawful distribution, payment or return of assets be made to the members, or if the corporation purchase or redeem any of its own shares in violation of this Chapter, the directors who knowingly, or without the exercise of reasonable care and inquiry, voted in favor thereof shall be liable jointly and severally to the corporation, or to creditors of the corporation, or to both, in an amount equal to amount of the unlawful distribution. An action to enforce such liability must be brought within two years from the date on which the distribution was made, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.
In City Stores Co. v. NEI Corp., 357 So.2d 1364 (La.App. 4th Cir.1978) this court, dealing with a suit by a creditor against the officers and directors of a business corporation, held that the only exception to the general rule insulating corporate officers and directors from liability for corporate debts is where fraud is alleged. In Altex Ready-Mixed C. Corp. v. Employers Com'l Union I. Co., 308 So.2d 889 (La.App. 1st Cir.1975), writs refused 312 So.2d 872, the court recognized that an officer or director could guarantee the debt of the corporation, but only in writing pursuant to C.C. Art. 2278. However, the court found the officer liable because of knowing misrepresentations he made to the creditor in reliance upon which the creditor acted to its detriment. Thus, liability was based on fraud.
In the instant case there are no allegations that relators provided respondent with their written guarantee of payment. Furthermore there are no specific allegations of fraud on relators' part. The word "fraud" is used once in the petition but in its context it cannot be construed as an allegation of any specific act of fraud committed by relators against respondent as in the Altex case. It simply alleges a general conclusion of "legal fraud" upon respondent because of relators' "wrongful diversion" of the grant funds, which again is a conclusory and not a factual allegation.
Respondent contends that relators violated a duty to it as in Canter v. Koehring Company, 283 So.2d 716 (La.1973), Adams v. Fidelity Company of New York, 107 So.2d 496 (La.App. 1st Cir.1958), and other cases which held that a tort victim can state a cause of action against individual officers and directors. The public policy considerations which made the individuals liable in these cases have no application to the relationship between an officer or director of a corporation and a commercial creditor of the corporation. C.C. Art. 437 and R.S. 12:226 would be meaningless if officers and directors were said to have a personal duty to a specific creditor to have its bill paid by the corporation. Ellett v. Newland, 171 La. 1019, 132 So. 761 (1931) is readily distinguishable. There the bank directors were held to owe a personal duty to depositors because the directors had violated a specific criminal statute which created the duty.
*204 Respondent's principal contention is that the contract between LWE and GTE created a constructive trust of the grant funds for the sole benefit of respondent and that relators violated some fiduciary duty to disburse the "trust" funds in accordance with the contract. In order to deal with this argument we must first pretermit certain problems which confront respondent. One is that the contract between LWE and GTE was not signed until over a month after the contract between LWE and respondent was executed. Under these circumstances it can hardly be said that LWE itself much less relators pledged this "trust" fund to respondent when the "trust" had not been yet created. Next, there is no bridge over the gap between LWE's liability to respondent and relators' alleged liability. Even if this contract can be said to have obliged LWE to set aside these particular funds for respondent which was already performing its earlier contract, nothing in the "trust" contract purports to make individual directors and officers "trustees" and there are no factual allegations which would impose on relators some sort of special fiduciary duty to respondent with respect to this "trust" fund in LWE's possession. In the final analysis this so called trust fund was no different than any other funds received by LWE with respect to which relators' duties are spelled out in R.S. 12:226. Respondent's factual allegations do not support a legal conclusion that relators violated this statute.
In any event, respondent's reliance on Section 2 of the LWE-GTE contract to support its theory of breach by relators of a constructive trust is clearly erroneous for two reasons. First the section itself merely outlines how the grant money "budget" is to be disbursed. To construe this vague schedule of payments as the creation of a trust stretches the point radically. But the principal weakness of respondent's argument is its failure to recognize the meaning of Section 2 when properly read in the context of the entire agreement, particularly Section 3 which provides as follows:
A. LWE shall be solely responsible for the Project and for the coordination, supervision and management of the Oases during the term of the Fair. LWE shall coordinate and manage the Project in a competent and professional manner in order to assure that the Oases are fully completed and operational on the opening day of the Fair, and to assure that the Oases continue to be open to Fair visitors throughout the term of the Fair and that the Oases maintain the public image objectives of the Company.
B. LWE reserves the right to contract with third parties for the performance of any or all of the Project components.
By this language GTE conferred on LWE the same freedom to administer its funds as any other funds. Relators charged by R.S. 12:226 with "good faith, diligence, care, judgment and skill which ordinarily prudent men would exercise under similar circumstances in like positions" would hardly conclude from a reading of the entire LWE-GTE contract that some solemn trust in favor of respondent had been imposed upon and accepted by them. On the contrary, if they read the contract at allwe again pretermit whether R.S. 12:226 imposed upon them this obligation they would probably construe it to mean nothing other than day to day operations use whatever funds are available to pay the most pressing debts, get the fair ready for opening day, and realistically hope that all creditors would eventually be paid.
We conclude that respondent failed to state a cause of action against relators, and the trial court erred in overruling their exception. Accordingly, the judgment appealed from is reversed and set aside, and there is judgment in favor of defendants, Petr Spurney, Norman Kerth, Charles Teamer, Martin Katz and Floyd Lewis, sustaining their exception of no cause of action and dismissing the petition of plaintiff, Fine Iron Works, Inc., against them at its cost.
REVERSED AND RENDERED.