IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 93-5365

_____


UNDRAY D. FORD, Etc., ET AL.,

Plaintiffs-Appellants,

versus

ERNIE ELSBURY, ET AL.,

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Western District of Louisiana
_____

(September 9, 1994)

Before REAVLEY, JONES and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:

In this appeal we decide whether the district court had diversity jurisdiction because of the fraudulent joinder of a defendant of non-diverse citizenship.  We conclude that the district court lacked jurisdiction and should remand the case to state court.

BACKGROUND

On July 28, 1992, an explosion occurred at a fertilizer plant in Westlake, Louisiana owned by appellee Arcadian Corporation ("Arcadian").  The explosion was caused by the rupture of the plant's urea reactor.  Appellant Undray Ford and

numerous other named plaintiffs (the "Ford plaintiffs") filed a class action suit in Louisiana state court shortly thereafter. The named defendants were Arcadian, the plant's manager Ernie Elsbury, and the plant's employee relations manager Paul Moore. The defendants removed the case to federal court. Although complete diversity was ostensibly lacking because the plaintiffs and the individual defendants were Louisiana citizens, the defendants claimed that Moore and Elsbury had been fraudulently joined. Plaintiffs filed a motion to remand. After limited discovery, the district court denied the motion to remand and *sua sponte* granted summary judgment in favor of Moore and Elsbury. The Ford plaintiffs complain on appeal that the district court erred in dismissing the claims against Elsbury and denying the motion to remand.

DISCUSSION

A.  *The Notice of Appeal*

Appellees Arcadian and Elsbury argue that the notice of appeal is defective because it did not sufficiently specify the parties seeking appellate review. The style of the notice identified the plaintiffs as "Undray D. Ford, et al.," and the body of the notice identified the appealing parties as the "`Ford' plaintiffs." Similar notices of appeal have been held defective.[1] However, as appellees recognize, effective December

---

[1]    *E.g. Torres v Oakland Scavenger Co.*, 108 S. Ct. 2405, 2409 (1988); *Samaad V. City of Dallas*, 922 F.2d 216, 219 (5th Cir. 1991).

2

1, 1993, FED. R. APP. P. 3(c) was amended.[2]  The intent of the 1993 Rule 3 amendments, as explained in the 1993 advisory committee notes, is to liberalize the pleading requirements for a notice of appeal.  The notice of appeal in this case, an uncertified class action, is sufficient as to all the Ford plaintiffs under the amended Rule.

Arcadian argues that the notice of appeal was filed before the effective date of the amendments, but the Supreme Court order adopting the amendment states that it "shall govern all proceedings in appellate cases thereafter commenced and, insofar as just and practicable, all proceedings in appellate cases then pending."  61 U.S.L.W. 4395 (U.S. Apr. 22, 1993).  Appellees have not shown that applying the amended Rule would operate as an unfair surprise to them or otherwise be unjust.  Throughout the district court proceedings the plaintiffs consistently referred to themselves as the "Ford" plaintiffs.  We therefore hold that

---

[2]     The amended Rule 3(c) now provides:

A notice of appeal must specify the party or parties taking the appeal by naming each appellant in either the caption or the body of the notice of appeal.  An attorney representing more than one party may fulfill this requirement by describing those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X" . . . . In a class action, whether or not the class has been certified, it is sufficient for the notice to name one person qualified to bring the appeal as representative of the class . . . .  An appeal will not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.

the amended Rule should govern our case,[3] and that the notice of appeal was sufficient as to all the Ford plaintiffs.

B.    *The Rule 54(b) Certification*

This appeal is interlocutory because the district court did not dismiss Arcadian and retained jurisdiction over the claims against that defendant.  An appeal will lie from a partial summary judgment under FED. R. CIV. P. 54(b) "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  Appellees contend that the partial summary judgment in favor of Elsbury and the denial of the motion to remand are not appealable because they were not properly certified for appeal under Rule 54(b).

The record confirms the following order of events.  A magistrate issued a report and recommendation on the then-pending motions to remand and for leave to amend the complaint.  He recommended that the motions be denied.  He further recommended that summary judgment be granted *sua sponte* in favor of Elsbury and Moore, since he concluded that a finding of fraudulent joinder of these defendants necessarily meant that no valid claim existed against them.[4]  The district court adopted the

---

[3]    We concluded that 1993 amendments to the Federal Rules of Appellate Procedure should be applied retroactively in *Garcia v. Walsh*, 20 F.3d 608, 609-10 (5th Cir. 1994)(concerning Rule 3 amendments), and *Burt v. Ware*, 14 F.3d 256, 257-60 (5th Cir. 1994) (concerning Rule 4 amendments).

[4]    *Compare Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 102 (5th Cir.) ("Because we have already concluded that Sizeler was fraudulently joined, we need not consider appellant's argument on this point further.  Summary judgment will always be appropriate in favor of a defendant against whom there is no

4

magistrate's recommendations, and entered a "Judgment" that, *inter alia*, denied the motion to remand and granted summary judgment in favor of Elsbury and Moore.  Plaintiffs then filed a motion to certify the denial of the motion to remand for interlocutory appeal pursuant to 28 U.S.C. § 1292.  After this motion was filed, the district court on July 13, 1993 entered two further orders -- an "Amended Judgment" and an order denying the motion for § 1292 certification.  The only change in the amended judgment was the addition of a statement that "such judgment is final and appealable" after the clause granting the partial summary judgment.  The order denying the motion for § 1292 certification contains the following handwritten note:  "Denied as moot.  Under the amended judgment signed 7/13/93, plaintiffs can appeal pursuant to Rule 54(b) of Fed. Rules of Civil Procedure."

Our decision is governed by *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218 (5th Cir. 1990) (en banc):

> If the language in the order appealed from, either independently or together with related portions of the record referred to in the order, reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable . . . .  Counsel should know that the district court has entered a partial final judgment when the order alone or the order together with the motion or some other portion of the record referred to in the order contains clear language reflecting the court's intent to enter the judgment under Rule 54(b).

*Id*. at 1220-21.

---

possibility of recovery."), *cert. denied*, 111 S. Ct 60 (1990).

The record unmistakably reflects the intent of the district court to enter Rule 54(b) final orders granting the partial summary judgment and denying the motion to remand. Among other things, the amended judgment states that the summary judgment "is final and appealable." The district court's denial of the request for § 1292 certification of the order denying the motion to remand plainly states that the request is moot because "plaintiffs can appeal pursuant to Rule 54(b)." Further, the denial of the motion to remand and the granting of the partial summary judgment were inextricably linked. Both grew out of the same round of motions and briefing, both relied on the same evidentiary showing, both are found in the same judgment and amended judgment, and both turned on the district court's conclusion that no claim existed against the non-diverse defendants. In such circumstances we have held that we can review on appeal the denial of the motion to remand along with the grant of the final partial judgment.[5]

---

[5] In *Aaron v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 876 F.2d 1157 (5th Cir. 1989), *cert. denied*, 110 S. Ct. 1121 (1990), we recognized that the denial of a motion to remand ordinarily is not reviewable on appeal, but that such could be reviewed when coupled with a FED. R. CIV. P. 12(b)(6) dismissal of defendants that was certified as final under Rule 54(b). We stated that "a final appealable order was entered along with the denial of the motion to remand, and we can review the latter without a need to resort to the extraordinary remedy of mandamus." *Id.* at 1160. Similarly, in *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981), the district court, as in our case, denied a motion to remand, entered final judgments against the non-diverse defendants, and certified the judgments for appeal under Rule 54(b). *Id.* at 547-48. We held that the refusal to remand was appealable in such circumstances, vacated one of the judgments, and remanded the case to the district court with instructions to remand the case to state court. *Id.* at 548,

C.   *Fraudulent Joinder*

The district court concluded that the two non-diverse defendants, Moore and Elsbury, had been fraudulently joined as defendants in order to defeat diversity jurisdiction.  The Ford plaintiffs raise no argument on appeal as to Moore.  They contend, however, that the district court erred in finding that Elsbury had been joined fraudulently.

1.   *Required Proof*

"The burden of persuasion placed upon those who cry `fraudulent joinder' is indeed a heavy one."  *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).  The standards for evaluating such a claim were summarized in *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40 (5th Cir. 1992):

> Where charges of fraudulent joinder are used to establish [federal] jurisdiction, the removing party has the burden of proving the claimed fraud. . . .  To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.

*Id*. at 42 (citations omitted).  While we have cautioned against "pretrying a case to determine removal jurisdiction," fraudulent joinder claims can be resolved by "piercing the pleadings" and considering summary judgment-type evidence such as affidavits and deposition testimony. *Carriere v. Sears, Roebuck and Co.*, 893

555.

7

F.2d 98, 100 (5th Cir.), *cert. denied*, 111 S. Ct. 60 (1990).

Such a procedure was followed here.

Elsbury was the plant manager when the explosion occurred. The circumstances under which a corporate officer or employee can be held individually liable for injuries to third persons under Louisiana law were explained in *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973). The court recognized that such individuals, like all persons, have a general duty to exercise due care so as to avoid injuries to third persons. *Id*. at 722 & n. 7. The court also recognized that liability may be imposed on such individuals where the duty breached arises solely because of the employment relationship. In this latter situation the court adopted the following criteria for imposing liability:

> 1. The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought.
>
> 2. This duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances -- whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
> 4. With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the

> injured plaintiff, breach of which specifically has
> caused the plaintiff's damages.  If the defendant's
> general responsibility has been delegated with due care
> to some responsible subordinate or subordinates, he is
> not himself personally at fault and liable for the
> negligent performance of this responsibility unless he
> personally knows or personally should know of its non-
> performance or mal-performance and has nevertheless
> failed to cure the risk of harm.

*Id*. at 721.

In claiming fraudulent joinder, Arcadian and Elsbury did not attempt to establish that no negligence whatsoever was involved in the plant explosion.  Nor can Arcadian dispute that it had a duty to protect the general public from injuries resulting from the negligent operation of its plant.  The district court ruled, and Arcadian does not dispute, that Arcadian would be liable as *respondeat superior* for the negligence of its employees.  Looking to the state law criteria described in *Canter*, the liability of Elsbury based on his employment as plant manager turns on such factual issues as (1) whether Elsbury or others delegated with due care the responsibility of safe maintenance and operation of the urea reactor,[6] and (2) whether Elsbury was aware or should have been aware of a risk of harm and nevertheless failed to respond to the risk in the manner in which a reasonably prudent plant manager would respond in the same or similar circumstances. A supervisor's knowledge of the dangers present "could give rise to the personal duty contemplated in *Canter*."  *Hayden v. Phillips*

---

[6]     *See Nine v. Harper*, 371 So.2d 320, 322-23 (La.Ct.App.), *writ denied*, 373 So.2d 526 (La. 1979) (recognizing a cause of action for delegation without due care and considering such factors as the qualification, training, and experience of the delegee)."

*Petroleum Co.*, 788 F. Supp. 285, 287 (E.D. La. 1992). If the elements for imposing individual liability on the corporate employee are met, it does not matter that the corporation might also be liable. *H.B. "Buster" Hughes, Inc. v. Bernard*, 318 So.2d 9, 12 (La. 1975).

### 2. *Record to Be Reviewed*

In reviewing the district court's ruling, we must first determine what evidence it should have considered. The evidence offered by the Ford plaintiffs in support of their motion to remand included expert affidavits and certain OSHA documents relating to the explosion, as well as excerpts from Elsbury's deposition. Appellees relied on Elsbury's affidavits and deposition testimony. This evidence was on file at the time the magistrate entered his report and recommendation, as well as when the district court entered its initial judgment and amended final judgment. After the entry of the amended judgment, the Ford Plaintiffs filed a document captioned "Motion to Reurge Plaintiffs' Prior Motion for Leave to File Second Amending and Supplemental Complaint and Motion to Remand Because of Newly Discovered Evidence" ("motion to reurge"). Submitted with the motion to reurge were five additional affidavits from Arcadian employees. The district court denied the motion.

The motion to reurge is best characterized as a motion to alter or amend judgment under FED. R. CIV. P. 59(e). We have held that a "motion for reconsideration" should be so treated, and see no reason to treat a "motion to reurge" differently. "A motion

10

for reconsideration filed within ten days of judgment is treated as a motion to alter or amend under Rule 59(e). . . . Rule 59(e) has been interpreted as covering motions to vacate judgments, not just motions to modify or amend." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353, 355 (5th Cir. 1993).[7]  Here the motion to reurge was filed within 10 days of the amended judgment.[8]

The motion to reurge asserted that the employee affidavits were newly discovered evidence.  It did not attempt to show that with greater diligence the affidavits could have been obtained earlier.  However, a Rule 59(e) motion need not make such a showing:

> Unlike Rule 60(b), Rule 59(e) does not set forth any specific grounds for relief. Nor can we discern any basis for engrafting the strict limitations of the

---

[7]  *See also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *cert. denied*, 114 S. Ct. 171 (1993):

> The Federal Rules do not recognize a "motion for reconsideration" *in haec verba*.  We have consistently stated, however, that a motion so denominated, provided that it challenges the prior judgment on the merits, will be treated as either a motion "to alter or amend" under rule 59(e) or a motion for "relief from judgment" under Rule 60(b).  Under which Rule the motion falls turns on the time at which the motion is served.  If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b).

[8]  Rule 59(e) motions must be served within 10 days after entry of the judgment.  In our case the amended judgment was entered on July 15, 1993, and the motion to reurge was served on July 26.  The service was "within 10 days" under Rule 59(e) because under FED. R. CIV. P. 6(a) weekends are not counted when the period of time prescribed by the Federal Rules is less than 11 days.

former onto the latter.  We conclude, therefore, that
in order to reopen a case under Rule 59(e) on the basis
of evidentiary materials that were not timely
submitted, the mover need not first show that her
default was the result of mistake, inadvertence,
surprise, or excusable neglect or that the evidence is
such as to show that the judgment was manifestly wrong.

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174

(5th Cir. 1990), *cert. denied*, 114 S. Ct. 171 (1993).

The district court denied the motion to reurge and hence

refused to consider the additional affidavits.[9]  Of course, a

district court must be allowed to "enforce some limits on the

timely submission of appropriate evidence."  *Bernhardt v.

Richardson-Merrell, Inc.*, 892 F.2d 440, 444 (5th Cir. 1990).  In

deciding whether to consider late-filed evidence, the district

court must strike a proper balance between two competing

interests:  "the need to bring litigation to an end and the need

to render just decisions on the basis of all the facts."

*Lavespere*, 910 F.2d at 174.

We conclude that the district court abused its discretion in

refusing to consider the additional evidence proffered with

plaintiffs' motion to reurge.  *Lavespere* instructs that in

striking the proper balance in these circumstances, the court

should consider, among other things, (1) the reasons for the

plaintiffs' default, (2) the importance of the evidence to the

plaintiffs' case, (3) whether the evidence was available to

plaintiffs before they responded to the summary judgment motion,

---

[9]    The court held in the alternative that even if it
considered the additional evidence it would not change its ruling
on the motion to remand.

12

and (4) the likelihood that the defendants will suffer unfair prejudice if the case is reopened. *Id*.

The first and third factors may weigh against plaintiffs, but we note that the motion to reurge was filed within the time for filing a motion to alter or amend judgment, and therefore plaintiffs were not required to make any particular showing of inadvertence or excusable neglect. Further, the circumstances here, as best we can glean from the record, cause us to question the extent to which plaintiffs were on notice that they were required to make an evidentiary showing in connection with the motion to remand. Only after plaintiffs filed their initial motion to remand, defendants filed their response, and both sides filed supplemental pleadings, did the magistrate recommend that the court *sua sponte* grant summary judgment in favor of the non-diverse defendants. The filing of a motion for summary judgment would have put plaintiffs on notice that they could not rely at all on their pleadings and were required to submit competent summary judgment evidence. Here, where no summary judgment motion was ever filed, the extent to which plaintiffs could rely on their pleadings was less clear. The court did instruct the parties to submit summary judgment-type evidence, but the decisions of our court are not crystal clear on this question. For example, although in some cases we state that parties may submit summary judgment-type evidence,[10] we have also indicated

---

[10] *E.g. B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981); *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 111 S. Ct. 60 (1990)

that the district court ordinarily should assume that all facts alleged in a plaintiff's state court petition are true.[11] We further note that in this case discovery was at an early stage and was beset by the usual share of discovery delays and squabbles.

The second factor weighs heavily in plaintiffs' favor, since the evidence offered with the motion to reurge, described further below, was highly relevant to the fraudulent joinder question. If considered it squarely contradicts the statements of Elsbury offered by defendants and establishes that plaintiffs have at least a "possibility" of establishing a state court cause of action against Elsbury.

The fourth factor -- the likelihood that defendants will suffer unfair prejudice if the case is reopened -- weighs in favor of plaintiffs because defendants could not have countered the evidence even if it had been timely presented. In other words, if plaintiffs had submitted the affidavits on time, a cause of action would have been at least "possible" regardless of defendants' evidence.

---

[11] In *Green v. Amerada Hess Corp.*, 707 F.2d 201 (5th Cir. 1983), *cert. denied*, 104 S. Ct. 701 (1984), we held that a district court erred in conducting a full evidentiary hearing on a motion to remand. We stated that "the court must ordinarily evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. . . . [T]he court must normally assume all the facts as set forth by the plaintiff to be true . . . ." *Id*. at 205.

Considering all these circumstances we believe that the district court should have allowed the proffer of additional evidence.

### 3. *Record Requires Remand*

Based on our review of the evidence presented in the motion to reurge and elsewhere, we conclude that appellees did not carry their burden of establishing that there is no possibility that the Ford plaintiffs could establish a cause of action against Elsbury. Appellees submitted affidavits of Elsbury stating that the responsibility for the safety, maintenance and operations of the plant was delegated to properly trained and qualified supervisors. He further states that he had no personal knowledge that the reactor posed a potential hazard or risk. The affidavits are conclusory, and do not explain whether Elsbury or some other company official delegated safety and maintenance matters to other supervisors. Nor do they provide any details on what efforts were made to assure that due care was used in the delegation of responsibility to these unnamed supervisors. Elsbury later explained in his deposition that the plant had an ammonia superintendent and a urea superintendent, and that the urea superintendent was responsible for the safe operation of the reactor. Elsbury admitted that he had authority to shut the plant down for safety reasons, but denied any knowledge of safety risks prior to the explosion. He admitted that he would expect the urea superintendent to report any threat to the safety of

15

employees and others, and that he met daily with the superintendents.

Appellants submitted expert affidavits by an accident reconstruction engineer, opining that the explosion was caused by leakage of process materials, and that with proper safeguards the leakage should have been apparent. He further opined that the leakage was obvious and that "it was highly likely and more probable than not known to the operators of the plant prior to the explosion." Elsbury denied any knowledge on his part, or on the part of those responsible for the operation and maintenance of the reactor, of a leak prior to the accident.

The five affidavits of Arcadian employees submitted with the motion to reurge contradicted Elsbury's testimony. One employee stated that he noticed that the reactor was leaking in June of 1992, that he notified the engineering superintendent, that nothing was done, and that "[t]he whole thing that shut the plant down was neglect and greed." A second employee stated that he knew the reactor was leaking, that he complained to Elsbury about having to work in an unsafe area, and that Elsbury told him: "Sometimes you have to overlook safety to get the job done." A third employee testified that when the plant was operated by a previous owner (Olin Corporation) it had been shut down due to a leak in the reactor, that the operations manual from the plant designer called for such a shutdown, that after a second leak was discovered under Arcadian management the plant continued to operate in a normal fashion, and that the second leak was not

16

seriously considered.  A fourth employee stated that Arcadian management was aware of a leak in the reactor prior to the explosion, and that at the time the price of urea was at an all-time high.  The fifth employee, a urea plant operator, stated that a leak was found in May of 1992, that his supervisor ordered the plant slowed down, and that the urea superintendent went into Elsbury's office and then returned to direct the plant back to full production.  This employee also stated that the plant was not shut down due to production demands, and that periodic shutdowns for maintenance ceased to exist.  All of this evidence, viewed in a light most favorable to the Ford plaintiffs, at least raises the possibility that they could succeed in establishing a claim against Elsbury under Louisiana law.

## CONCLUSION

We reverse the summary judgment granted in favor of Elsbury and the order denying the motion to remand.  We remand the case to the district court with instructions to remand the case to state court.

REVERSED AND REMANDED.