**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2009

No. 08-30043

Charles R. Fulbruge III
Clerk

KLING REALTY COMPANY INC; WALET PLANTING CO.

Plaintiffs-Appellants

v.

CHEVRON USA INC., individually and as successor in interest, formerly doing business as Texaco Inc., formerly doing business as Texaco Exploration and Production Inc

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The original opinion in this case was issued by the panel on December 17, 2008. *Kling Realty Co. Inc. v. Chevron USA Inc.*, 306 F. App'x 24 (5th Cir. 2008). A petition for rehearing is currently pending before this panel. The petition for panel rehearing is granted to the extent that we VACATE our previous opinion and replace it with the following opinion. In all other respects, the petition for panel rehearing is DENIED.

This case involves the contamination of land by oil and gas exploration over several decades during the twentieth century. Plaintiffs-Appellants Kling Realty Co. and Walet Planting Co. (together, "Kling/Walet") sued Defendant-

Appellee Chevron USA Inc. ("Chevron"), successor in interest to Texaco, and two other defendants in state court. Chevron removed to federal court, alleging improper joinder of non-diverse defendants. The district court dismissed the non-diverse defendants, and denied Kling/Walet's motion to remand. The district court dismissed all claims with prejudice, holding that they were barred by prescription and dismissed as moot Kling/Walet's motion for leave to add a non-diverse party. We AFFIRM the judgment.

## BACKGROUND

Kling/Walet's claims are rooted in the contamination of their property in Iberia Parish, allegedly caused by Chevron's predecessor (Texaco) while it was engaged in the exploration and production of oil and gas. Kling/Walet and Chevron were parties to an oil and gas lease relating to the property, which terminated, at the latest calculation, in August 1974. Four wells were established on the Kling/Walet property, the claims in this case relate to Well No. 6 ("Well"), the only well that was productive for Chevron.[1] The Well was plugged and abandoned in October 1971.

Kling/Walet have used the property for sugar cane farming since the 1970s. At the time that they began farming, Kling/Walet were concerned that crops would not grow on a small piece of their property. After bringing their concerns to Chevron, Kling/Walet entered into a release of claims associated with the Well and any pit, tank battery, or other piece of equipment associated with the Well (the "1973 Release"), for consideration of approximately $4,000. It is undisputed that Chevron's activities on the property ended no later than 1974.

Kling/Walet filed this action in June 2006 in Louisiana state court. Kling/Walet sought to recover compensatory and punitive damages from

---

[1] Two other wells were abandoned as dry holes. The third, drilled by an entity unrelated to Chevron, was also a dry hole.

Chevron, Estis Well Service, LLC ("Estis"), and Jack P. Martin, Sr. ("Martin") (collectively, "Defendants") for contamination of their property located in Iberia Parish, Louisiana. Kling/Walet are citizens of Louisiana, as are Estis and Martin. Chevron is not. Kling/Walet allege that they are lessors, assigns, and/or successors in interest to certain oil, gas, and mineral leases with Chevron. Kling/Walet alleged that Defendants conducted and/or participated in various oil and gas exploration and production activities on land including their property, causing ongoing property damage and various forms of emotional distress.

In August 2006, Chevron filed a notice of removal. In October 2006, Kling/Walet responded with a motion to remand to state court. In January 2007, the district court entered a Memorandum Ruling and Order, concluding that non-diverse Defendants Estis and Martin had been improperly joined, dismissing the claims against them, concluding that diversity jurisdiction was proper, and denying the motion to remand.

In May 2007, Chevron filed a motion for partial summary judgment, arguing, among other bases, that Kling/Walet's claims had prescribed.[2] In December 2007, the district court granted Chevron summary judgment on the issue of prescription for all claims and denied as moot Kling/Walet's motion for leave to amend. Kling/Walet appeal.

## DISCUSSION

### I. Diversity Jurisdiction

A determination that a party is improperly joined and the denial of a motion for remand to state court are questions of law reviewed *de novo*.

---

[2] While that motion was pending, Kling/Walet moved in August 2007 for leave to amend their petition to add a non-diverse defendant, M&C Contractors, Inc. ("M&C"). The court denied the motion as moot when it held the underlying claims had prescribed. In light of our holding on the issue of prescription, we affirm the district court's judgment as to M&C as well.

3

*McDonal v. Abbot Labs.*, 408 F.3d 177, 182 (5th Cir. 2005). However, this court reviews a district court's procedure for determining improper joinder only for abuse of discretion. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309-10 (5th Cir. 2005).

Kling/Walet argue that the district court erred by piercing the pleadings and dismissing Martin because neither party presented summary judgment-type evidence related to whether they had any possibility of prevailing against Martin, and Chevron therefore did not meet its burden to show improper joinder.[3] Chevron argues that Martin was properly dismissed because, Kling/Walet's petition fails to state a claim against Martin under Louisiana law. Chevron further points to the absence of allegations or evidence presented by Kling/Walet to show how Martin was connected to their property such that he faced any liability for the alleged contamination.

There are two bases on which the district court might determine that a plaintiff improperly joined a non-diverse defendant to defeat subject matter jurisdiction: "(1) actual fraud in the plaintiff's pleading of jurisdictional facts, or (2) inability to establish a cause of action." *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). Under the second prong,[4] the test "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Campbell*, 509

---

[3] Other than a one-sentence relief request, Kling/Walet make no argument that Estis was properly joined. Therefore the issue of Estis's dismissal is waived. *See, e.g., Edmond v. Collins*, 8 F.3d 290, 292 n.5 (5th Cir. 1993) ("On appeal, we do not review issues not briefed.").

[4] Chevron does not argue that the first prong is applicable.

F.3d at 669 (quoting *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). The burden of persuasion on a party claiming improper joinder is a "heavy one." *Id.*

The district court concluded that Kling/Walet failed to state a claim against Martin, relying largely on *Canter v. Koehring*, 383 So. 2d 716 (La. 1973), and *Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994) (discussing liability of a supervisor-employee under Louisiana law and applying *Canter*). In *Canter*, the Louisiana Supreme Court held that an employee could only be held personally liable for injuries to third persons where: (1) the employer owed a duty of care to the third person, breach of which caused the damage for which recovery is sought; (2) that duty was delegated by the employer to the defendant; (3) the defendant employee breached his duty through personal (not technical or vicarious) fault; and (4) the employee had a personal duty toward the injured third party, the breach of which specifically caused the third party's damages. *Canter*, 283 So. 2d at 721. Further, with regard to the accused employee's personal fault, personal liability cannot be imposed upon the employee simply because of his general administrative responsibility for some function of employment. *Id.*

The district court found Kling/Walet's suit distinguishable from *Ford*. In *Ford*, the plaintiffs sued a chemical plant and certain individual defendants, including the plant manager. 32 F.3d at 936-37. The defendants removed, alleging the manager, among other defendants, was improperly joined. This court concluded the *Ford* plaintiffs did have a reasonable possibility of recovery against the plant manager, where the facts showed that the plant manger knew of the leak that lead to the explosion. *Id*. at 938-39. Here, the district court concluded that, in contrast to *Ford*, Kling/Walet made only general and unsupported allegations that Martin breached a personal duty owed to them without pleading facts establishing what that actionable, non-general

managerial duty might be. The district court concluded that the allegations in Kling/Walet's complaint and motion to remand were not enough to establish a *Canter* duty.

Kling/Walet argues that the district court abused its discretion by piercing the pleadings regarding Martin and improperly shifted the evidentiary burden from Chevron to Kling/Walet. Kling/Walet further asserts that its petition sufficiently alleges a claim against Martin under the requirements of *Canter*.[5] Chevron argues that the district court conducted its analysis properly and that it correctly concluded that Kling/Walet would not be able to recover against Martin under Louisiana law. We acknowledge that it is less than clear from the passage of the district court's order denying remand whether the district court engaged in a Rule 12(b)(6)-style analysis, a summary inquiry after piercing the

---

[5] There are two paragraphs of the petition that specifically reference Martin. In paragraph five of the petition, Martin is listed as one of five defendants: "JACK P. MARTIN, SR., a Louisiana resident and long-time supervisor in the Fausse Point Field." Paragraph twenty-eight details the allegations against Martin:

28. For many years, defendant Jack P. Martin, Sr., served as supervisor of production for the operators who conducted production activities in the subject oil field. He directly and personally supervised the installation and use of pits, wells, pipelines, tank batteries, gas plants and other installations or equipment used in connection with production activities on the Plaintiffs' property. He had personal knowledge of the activities of all defendants that caused or contributed to the pollution complained of herein. Further, in his supervisory capacity he had the authority to prevent or limit such activities. Martin knew that production, disposal, and discharge activities conducted on the subject property were hazardous to persons and property. Martin knew that disposal of oilfield wastes in unlined earthen pits or directly to waterways inevitably results in seepage which contaminates both surface and subsurface soils and waters. Despite his knowledge, Martin failed to warn petitioners concerning the nature and extent of the pollutants on their property. Martin had a personal duty to protect the Plaintiffs and their property, and he breached that duty, thereby causing the damages described in this petition.

pleadings, or both, in arriving at its conclusion that joinder of Martin was improper.[6] However, we need not parse the order to determine which it is.

---

[6] The district court's order denying remand first summarizes the parties arguments regarding possible recovery against Martin, which appeared to focus only on the pleadings:

> In sum, plaintiffs argue[] that Martin's supervisory capacity gave him the authority and a personal duty to prevent or limit the hazardous pollution . . . which Martin violated and thus renders him personally liable to plaintiffs. Defendant argues that allegations contained in both Plaintiffs' Complaint and Motion to Remand are vague . . . and fail to identify the employer for whom Martin worked . . . or allege any specific acts performed by Martin that would give rise to a personal duty owned to plaintiffs.

However, in its comparison of the present case to *Ford*, where the pleadings were pierced, it becomes less clear whether or not the district court then pierced Kling/Walet's pleadings as part of its analysis:

> The facts before this Court in the instant case are distinguishable from *Ford*. In *Ford*, the evidence provided by plaintiffs suggested, by affidavit testimony, that the plant manager knew of the leak, therefore indicating that there was a possibility of recovery against the plant manager. Here, plaintiffs make general and unsupported allegations that Martin breached a personal duty owed to them. Plaintiffs have not provided any evidence in support of their Motion to Remand relating to the damage caused to the subject property or to Martin's knowledge thereof. There is no evidence that any of plaintiffs' allegations arise from a non-managerial duty or that Martin's position and responsibilities entailed more than general administrative and managerial responsibilities where Martin could be held personally responsible under *Canter*. Moreover, plaintiffs have failed to produce any evidence that supports the allegation that Martin knew or should have known of any ongoing activities hazardous to the property, and how a reasonable "supervisor" in Martin's position should have acted on that knowledge. The plaintiffs only point to the fact that Martin supervised certain activities of the defendants' on the subject property at the time of the incident, that the supervisory position presupposes certain knowledge, and claim a personal duty arising from the previous to plaintiffs. Under Louisiana law, however, there must be more before a court can find that there is a possibility of finding personal fault on the part of an employee. Conclusory allegations, as found in plaintiffs' Complaint and Motion to Remand, are not enough to establish a *Canter* duty, as set out above. The plaintiffs have not set forth any summary judgment type evidence or any other facts which would establish that there is a possibility that Martin could be held personally liable under *Canter*.

*Kling*, Order Denying Remand, No. 06-1492, 2007 WL 81665, at *5 (W.D. La. Jan. 8, 2007) (citation omitted).

We agree with the district court that Kling/Walet's conclusory allegations do not establish a reasonable possibility of recovery against Martin under *Canter*, although on different reasoning. *See United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 n.8 (5th Cir. 2008) ("[I]t is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record."). Significantly, this court has held that *Canter* liability to third persons for the negligence of corporate officers and employees may only be imposed for bodily injury claims. *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *see Ford*, 32 F.3d at 935-36 (noting *Canter* outlines circumstances where an employee could be held "individually liable for injuries to third persons"). Because the only injury alleged in Kling's petition is economic and emotional – damage to its property and various forms of mental distress[7] – Kling/Walet would not have a basis for recovery against Martin under Louisiana law as it has been interpreted in this circuit. *See Unimbobil*, 797 F.2d at 217; *also Hibernia*

---

[7] Specifically, Kling/Walet's petition summarizes the requested relief as follows:

30. In summary, Plaintiff is thus entitled to the following damages:
a. . . . funds to conduct a[] . . . analysis of the . . . contamination on its property . . .;
b. The cost to restore its property to its pre-polluted, original condition . . .;
c. Punitive or exemplary damages;
d. An award for unjust enrichment damages for defendants' unauthorized use of Plaintiff's land . . .;
e. . . . [S]tigma damages for diminution in property value . . .;
f. Mental anguish and distress damages;
g. Any civil fruits derived from defendants' illegal trespass;
h. Damages for annoyance, discomfort and inconvenience occasioned by nuisance created by defendants, including loss of full use and enjoyment of Plaintiff's property; and
i. All other consequential damages . . . that relate to defendants' breach of contract, including the costs and attorneys' fees incurred in bringing this action.

*Cmty. Dev. Corp., Inc. v. U.S.E. Cmty. Servs. Group, Inc.*, 166 F. Supp. 2d 511, 515 (E.D. La. 2001) (applying bodily injury distinction announced in *Unimobil*).[8]

Because Kling/Walet had no reasonable possibility of recovery against Martin, there was complete diversity between Kling/Walet and Chevron, and the court properly denied the motion to remand and retained diversity jurisdiction to hear the case.[9]  *See Guillroy*, 434 F.3d at 312-13.

## II. Prescription

Because the district court had proper subject matter jurisdiction over Kling/Walet's suit, we turn to the issue of whether Chevron was entitled to summary judgment.  We review the grant of summary judgment *de novo*, applying the same standard on appeal that is applicable in the district court. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

---

[8] The Louisiana precedent principally relied on by the *Unimobil* court, *Fine Iron Works v. Louisiana World Exposition, Inc.*, 472 So.2d 201 (La. App. 1985), *writ denied*, 477 So.2d 104 (La. 1985), remain good law in Louisiana.  *See, e.g., Cameron Equip. Co., Inc. v. Stewart and Stevenson Servs., Inc.*, 685 So.2d 696, 700 (La. App. 1996) (citing *Fine Iron Works* for the rule that absent fraud, officers are not personally liable for the debts of the corporation).  Although *Fine Iron Works* has not been cited with frequency, the reasoning of the case remains in effect. *See, e.g., Korson v. Independence Mall I, Ltd.*, 595 So.2d 1174, 1178 (La. App. 1992) ("Officers, employees and agents owe no duties to third parties, and cannot be found liable to third parties for their negligent acts and omissions in a commercial context, such as this case." (citing *Unimobil 84*, 797 F.2d at 215-17)).  In addition, we have found no intervening decisions or statutory amendments that would cause *Unimobil*'s interpretation of *Canter* to be clearly wrong.  *See Lamar Advertising Co. v. Cont'l Cas. Co., 396 F.3d 654, 663 n.8* (5th Cir. 2005) (discussing doctrine of panel stare decisis requiring panel in diversity cases to adhere to a prior panel's interpretation of state law in the absence of a subsequent state court decision or statutory amendment which makes this court's prior decision "clearly wrong") (quoting *Amer. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 271 n.4 (5th Cir. 2003)).  We also note that all of the cases applying *Canter* that Kling/Walet has cited in its filings involved claims of bodily injury.  *See, e.g., McKee v. Kansas City S. Ry.*, 358 F.3d 329 (5th Cir. 2004) (featuring a plaintiff was a vehicle passenger injured in a collision with a train and suing train engineers as well as rail company); *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003) (featuring a plaintiff who was the mother of a driver killed when his car was struck by train at a rail crossing and suing train engineer as well as rail company).

[9] Because we resolve this appeal without looking beyond Kling/Walet's pleadings, we need not decide whether the district court erred either by piercing the pleadings without notice to Kling/Walet and/or shifting the burden to plaintiffs regarding Martin's improper joinder.

Summary judgment may be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). In determining whether summary judgment is appropriate, all of the evidence and all of the factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion. *Terrebonne Parish*, 310 F.3d at 877. A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Id*.

Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed. *In re Moses*, 788 So. 2d 1173, 1177-78 (La. 2001). However, because more than a year has elapsed between the time of the tortious conduct and the filing of the tort suit, the burden shifts to Kling/Walet to demonstrate prescription was suspended or interrupted. *Id*. Kling/Walet assert that either or both the doctrine of *contra non valentem* and the theory of continuing tort suspend or interrupt prescription in this case.

A. Doctrine of *Contra Non Valentem*

Kling/Walet first argue that the court erred in granting summary judgment based on prescription because material issues of fact are in dispute regarding the reasonableness of their delay in filing suit under the doctrine of *contra non valentem*. Specifically, Kling/Walet argue that there is a factual dispute about when they became fully aware of the extent and kind of contamination on their land, and thus of their right to sue. Chevron responds that Kling/Walet had knowledge for decades of alleged contamination of the property and its lack of productivity, Kling/Walet could not rely on *contra non valentem* to avoid the running of prescription. Chevron further argues that *contra non valentem* is inapplicable because of the testimonial and documentary evidence that Kling/Walet knew since the 1970s that the soil surrounding the Well would not sustain crop growth.

The doctrine of *contra non valentem* was created by the Louisiana courts as an exception to the general rules of prescription. *Wimberly v. Gatrch*, 635 So. 2d 206 (La. 1994). Damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action. "The doctrine of *contra non valentem* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff." *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993); *see also Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000). Louisiana recognizes four situations where *contra non valentem* applies. *Causby v. Perque Floor Covering*, 707 So. 2d 23, 25 (La. 1998). The two at issue here are: (1) where the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action; and (2) where the cause of action is not known or reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant. *Id.*

When prescription begins to run depends on the reasonableness of Kling/Walet's inaction. *See Cole*, 620 So. 2d at 1157; *see also Terrebonne Parish Sch. Bd.*, 310 F.3d at 884. As a judicial exception to the statutory rule of prescription, Louisiana courts strictly construe *contra non valentem* and only extend its benefits up to "the time that the plaintiff has actual or constructive knowledge of the tortious act." *Eldredge*, 207 F.3d at 743 (affirming summary judgment of prescription where plaintiff noticed damage to land from tug-boat company actions, yet took no further legal steps to stop the tort until two decades later). Kling/Walet allege that Chevron misled them about the kind and extent of contamination when they raised the issue of soil damage in 1973. They further allege that the damage was not reasonably knowable (and unknown) until within a year of filing the present suit.

We conclude that *contra non valentem* is inapplicable to Kling/Walet's suit. There is no evidence in the record showing that Chevron was aware of increasing

contamination from salt or otherwise after the 1973 Release or acted to prevent Kling/Walet from availing themselves of their cause of action in a timely manner. In addition to those contamination problems Kling/Walet were aware of at the time of the 1973 Release, Mr. Walet also testified in deposition about his history of farming on the subject property and knowledge of low yields and crop problems over the years since the Well was plugged. Documents from a former Kling/Waletrepresentative mentioned Chevron's "dumping salt water, oily by-products, chemicals, on" the property and concerns about the "virtually zero" productivity of the land. As early as the 1970s, Kling/Walet had information "sufficient to excite attention and prompt further inquiry," yet did not investigate or bring their claims until now. *See Eldredge*, 207 F.3d at 743.

B. Continuing Tort

Kling/Walet further argue that a continuing tort has suspended the running of prescription. Specifically, Kling/Walet argue that the pollution of their land, like dumping foreign materials onto the property of another without authority, constitutes a continuing trespass or nuisance. Chevron responds that there is no continuing tort in this case because the alleged tortious conduct ceased by the mid-1970s when Well operation ceased and the final release of the lease at issue was recorded.

When the tortious cause of injury is a continuing one, under Louisiana law prescription does not begin to run until the conduct causing that damage ceases. *Bustamento v. Tucker*, 607 So. 2d 532, 542 (La. 1992). "When the damaging conduct continues, prescription runs from the date of the last harmful act." *South Cent. Bell Tel. Co. v. Texaco, Inc.*, 418 So. 2d 531, 532 (La. 1982). Kling/Walet's knowledge of their claim is immaterial to the running of prescription in the case of continuing torts. *Scott v. Am. Tobacco Co., Inc.*, 949 So. 2d 1266, 1280 (La. Ct. App. 2007).

Louisiana courts have recognized that in some instances the unlawful invasion of another's property by hazardous waste falls in the category of continuing trespass. *See South Cent. Bell*, 418 So. 2d at 533 (holding prescription did not begin to run on tort claim by owner of underground gas tanks at filling station for damages sustained by underground telephone cables by gas leaking from the tanks until the leaking tanks were replaced). Kling/Walet argue that Chevron deposited such waste on their property in connection with its oil exploration, that Chevron no longer had permission to keep waste on their property once the lease was terminated, and this continuing failure to clean up the waste is the continuing tort. *See M&A Farms, Ltd. v. Ville Platte*, 422 So. 2d 708, 711 (La. Ct. App. 1982) ("[T]he trespass continues as long as the offending object remains on the premises, and the trespass is terminated only by the removal of the object wrongfully placed there.").

However, a "continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Crump v. Sabine River Auth.*, 737 So. 2d 720, 728 (La. 1999) (continuing tort theory did not apply where property owner sued river authority claiming that canal dug on authority's property by third parties diverted water from the bayou flowing over the owner's property). "[F]or there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant." *Crump*, 737 So. 2d at 728. Here, the Well was plugged and abandoned on October 21, 1971. Kling/Walet entered into the 1973 Release with Chevron after Chevron "restored the property to its original condition." Because the 1973 Release contained a three-year window for claims, prescription began to run three years after the date of the 1973 Release.

Further, "the breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every

13

tortfeasor." *Id.* Louisiana law distinguishes between acts of trespass that terminate and those that continue. For example, bulldozing a levee on plaintiff's property is a trespass but not a continuing trespass because no object or thing was left behind on plaintiff's property; in contrast, the construction of locks and dams permanently flooding another's land has been held a continuing tort. *Compare M&A Farms*, 422 So. 2d at 711-12, *with Cooper v. Louisiana Dep't of Public Works*, 870 So. 2d 315, 323 (La. Ct. App. 2004). Similarly, leaving a leaking gas tank underground to damage cables on the property is a continuing trespass, while digging a canal on adjoining property is not. *Compare South Cent. Bell*, 418 So. 2d at 533; *with Crump*, 737 So. 2d at 728. Thus, the question is whether a continuing physical invasion of the property is present.

We are not persuaded that failure to clean up the contamination constitutes such a continuing physical invasion under Louisiana law. Any contamination of the Kling/Walet property caused by Chevron is the continuing effect of prior conduct; the soil damage is unlike dumping garbage or litter on another's property. *See Estate of Patout v. City of New Iberia*, 708 So. 2d 526 (La. Ct. App. 1998), *affirmed by*, 738 So. 2d 544 (1999); *Dore v. Jefferson Guar. Bank*, 543 So. 2d 560, 562 (La. Ct. App. 1989). The contamination at issue in this case is distinguishable from the leaking gas tank in *South Central Bell*. 418 So. 2d at 533. In that case, the tanks at issue were leaking extensively and continuously throughout the time period subject to litigation. In contrast, Chevron plugged the Well in 1971. Further, Louisiana courts have distinguished *South Central Bell* as being based on a theory of strict liability under La. Civ. Code art 667, which is not applicable here. *See Labatut v. City of New Orleans*, 686 So. 2d 1038, 1040 (La. Ct. App. 1996).

Because Kling/Walet have not established an exception to prescription, we affirm the award of summary judgment to Chevron on the basis that Kling/Walet's claims are time-barred.[10]

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[10] Kling/Walet assert that they have stated two other claims under continuing trespass: (1) duties of vicinage (duty owed by it due to its status as a mineral lessee); and (2) the duty to disclose based on their contractual relationship. However, these arguments were not presented to the district court and are therefore not properly before this court.