h KNOLL, Judge.
In this revendicatory action against the seller and subsequent purchasers of two diesel engines, Cameron Equipment 1987, Inc. d/b/a/ Cameron Equipment appeals the judgment of the trial court. We affirm.
FACTS
On June 12, 1987, Cameron Equipment purchased two used General Motors EMD-12-645-E-l diesel engines from Petroleum Services, Inc. The two engines were purchased along with other used oil field equipment for a total price of $73,000. At the time *698 of this sale, the two diesel engines were located in the equipment yard of Power Rig Drilling Company in Scott, Louisiana.
For two years following the sale, Cameron Equipment left the engines where they were at Power Rig. The engines were not removed from the yard or marked as property of Cameron Equipment.
ROn June 12, 1989, Petroleum Services sold the engines to another company, Power International, Inc. for $38,000. Power International immediately resold the engines to American General Transportation Co., Inc. for $60,000. On June 14, 1989, American General brokered the engines to Stewart & Stevenson Services, Inc. for $7.5,000. Stewart & Stevenson needed the engines for use in a towboat it had contracted to build.
On June 15, 1989, American General removed the engines from the Power Rig yard and transported them to Stewart & Stevenson’s facility in Harvey, Louisiana. Coincidentally, Cameron Equipment arrived to remove the engines from the Power Rig yard just hours after they had been taken by American General.
On August 10, 1989, Cameron Equipment filed suit against Stewart & Stevenson and Travis Ward, the president and sole shareholder of Petroleum Services, Inc. In its petition, Cameron sought the return of the engines and damages for their conversion. Eventually, Petroleum Services, American General, and Power International (the subsequent purchasers) were added as defendants.
A bench trial on the merits was held on October 18-27, 1994. The trial court rendered judgment in favor of Cameron Equipment and against Petroleum Services for conversion in the amount of $50,000, which the court determined to be the fair market value of the engines at the time of the second sale. The trial court denied Cameron Equipment’s claims against the subsequent purchasers, finding that since Cameron Equipment never took possession of the engines, La.Civ.Code art. 518 operated in favor of the subsequent purchasers, whom it determined were in good faith. The trial court refused to pierce the corporate veil and hold Travis Ward personally liable for the conversion damages awarded against his company, Petroleum Services.
hCameron Equipment appeals, assigning as error the trial court’s determination that it did not take possession of the engines following The initial sale, the trial court’s application of La.Civ.Code art. 518 in favor of the subsequent purchasers, and the trial court’s failure to pierce the corporate veil.
CIVIL CODE ARTICLE 518
The trial court held that Power International, American General, and Stewart & Stevenson were superior in title to Cameron Equipment under La.Civ.Code art. 518, which states:
The ownership of a movable is voluntarily transferred by a contract between the owner and the transferee that purports to transfer the ownership of the movable. Unless otherwise provided, the transfer of ownership takes place as between the parties by the effect of the agreement and against third persons when the possession of the movable is delivered to the transferee.
When possession has not been delivered, a subsequent transferee to whom possession is delivered acquires ownership provided he is in good faith. Creditors of the trans-feror may seize the movable while it is still in his possession.
This appeal raises two questions with regal'd to Article 518: first, whether possession was delivered to Cameron Equipment sufficient to perfect the sale with regard to third parties, and second, whether Article 518 vested the subsequent purchasers with title superior to Cameron Equipment.
POSSESSION
The 1979 Revision comments to Article 518 indicate that “possession” contemplates both actual delivery and constructive delivery. ’ La.Civ.Code art. 2477 providés the following methods for making delivery with regard to movables:
Delivery of a movable takes place by handing it over to the buyer. If the parties so intend delivery may take place in another manner, such as by the seller’s handing *699 over to the buyer the key to the place where the thing is stored, or by negotiating to him a document of title to the thing, or even by the mere consent of the | jparties if the thing sold cannot be transported at the time of the sale or if the buyer already has the thing at that time.
Cameron Equipment first asserts that it took actual possession of the engines when Baker Littlefield, the owner of Power Rig, possessed the engines as Cameron Equipment’s agent. The record reflects that the engines were originally purchased in 1986 as a joint venture between Petroleum Services and Baker Littlefield. Soon thereafter, Petroleum Services bought out Baker Little-field’s interest in the engines, but Littlefield continued to store the engines at Power Rig on behalf of Petroleum Services.
Baker Littlefield never agreed to store the engines on behalf of anyone other than Petroleum Services. He testified that had he known the engines had been sold by Petroleum Services, he would have told the new owner to remove them from his yard. Travis Vollmering, an agent for Cameron Equipment, knew that Baker Littlefield would not allow the engines to remain at Power Rig if he was aware of the sale. The record evidence clearly indicates that Baker Littlefield did not take possession of the engines as an agent of Cameron Equipment.
Cameron Equipment alternatively asserts that it took constructive possession of the engines under La.Civ.Code art. 2477. Cameron Equipment asserts that Petroleum Services “handed over the keys” to the building where the engines were kept when Petroleum Services made arrangements with Baker Littlefield to store the engines indefinitely at Power Rig. In effect, Cameron Equipment asserts that Petroleum Services transferred its storage agreement with Baker Littlefield incident to the sale. This assertion is also without merit. Petroleum Services had limited access to the Power Rig yard, extended only as a courtesy by Baker Littlefield. As noted above, Baker Littlefield was kept in the dark about the sale to Cameron IsEquipment, and he never agreed to store the engines at Power Rig for Cameron Equipment. The record amply reflects that Baker Littlefield would not have allowed the engines to remain in the Power Rig yard if they belonged to anyone other than Petroleum Services. We find the record supports the trial court’s conclusion that there was no act between Cameron Equipment and Baker Littlefield which would equate to “handing over the keys,” or that would put a third party on notice that Cameron Equipment was owner of the engines.
Cameron Equipment asserts that because of the enormous size and weight of the engines, they were insusceptible of transport at the time of the sale. Cameron Equipment therefore alleges that possession of the engines was transferred by the mere consent of the parties under La.Civ.Code art. 2477. The record clearly shows that although the engines were very heavy, they were susceptible of transport. We note with significance that after American General sold the engines to Stewart & Stevenson it took only one day to transport the engines from the Power Rig yard in Scott, Louisiana to Stewart &. Stevenson’s yard in Harvey, Louisiana. We find that because the engines were susceptible of transport, ownership could not be transferred by mere consent of the parties under La.Civ.Code art. 2477.
Cameron Equipment never took possession of the engines, and its purchase of the engines was never perfected with respect to third parties. Petroleum Services was never divested of possession and Baker Littlefield continued to store the engines for Petroleum Services. Ownership of the engines was never transferred vis a vis third parties, and any third party in good faith was entitled to assume that Petroleum Services, who never lost possession, was still owner of the engines.
Cameron Equipment argues that Power International, American General, and Stewart & Stevenson are not entitled to the protection of Article 518 because they 1 (;each purchased from a vendor who was not in possession of the engines at the time of the sale. Cameron Equipment argues that it already was the owner of the engines and cites the provision contained in La.Civ.Code art. 2452 that: “the sale of a thing belonging *700 to another person is null” to support its superior title to the engines.
Cameron Equipment’s argument and reliance on Article 2452 are misplaced. In Frey v. Amoco Production Co., 603 So.2d 166 (La.1992), the Supreme Court stated:
We also note one need not own a thing in order to perfect a sale. The sale of a thing belonging to another is not absolutely null, but only relatively so, and such nullity is in the interest of the purchaser. See La.Civ. Code art. 2452; Wright v. Barnes, 541 So.2d 977 (La.App. 2d Cir.1989); S. Litvinoff, [2] Obligations § 36.
Frey, 603 So.2d at 177.
The sale of a corporeal movable without tradition of the movable is insufficient to transfer ownership. Until he receives possession of the movable, the purchaser only has the right to require delivery of the thing from the seller upon payment of the price. See Litvinoff, Obligations, 7 Louisiana Civil Law Treatise § 75, at 126 (1975). In the case sub judice, Cameron Equipment merely had the right to require delivery, it did not acquire ownership with regard to third parties. In the same fashion, the subsequent purchasers acquired the right to require delivery of the engines from Petroleum Services. While the sale of the engines alone was insufficient to transfer ownership to the subsequent good faith purchasers, the sale combined with the subsequent good faith purchasers’ corporeal possession of the engines was sufficient to transfer ownership. The subsequent purchasers were able to acquire full ownership of the .engines when they purchased them in good faith and subsequently took possession.
17Accordingly, we find that Cameron Equipment never took possession of the engines and that the subsequent good faith purchasers were entitled to the protection of La. Civ. Code art. 518.
PIERCING THE CORPORATE VEIL
Cameron Equipment assigns as error the trial court’s failure to hold Travis Ward personally liable for damages occasioned by Petroleum Services’ resale of the engines. Although the trial court rendered judgment against Petroleum Services for $50,000, it refused to pierce the corporate veil and hold Travis Ward, the president and sole shareholder of Petroleum Services, personally liable. Cameron Equipment concedes that the trial court adequately addressed the veil piercing issue with respect to shareholder liability. However, Cameron Equipment asserts that Mr. Ward’s liability is not based on his being a shareholder of Petroleum Services, but that his personal negligence as an officer of the corporation was the cause of the wrongful conversion of the engines.
Generally, Louisiana law does not provide third parties with a cause of action against corporate directors and officers for negligence, mismanagement, breach of fiduciary duty, or for debts of the corporation. Officers, employees, and agents owe no duties to third parties, and they cannot be found liable to third parties for their negligent acts and omissions in a commercial context. Goodwin v. Agrilite of Louisiana, 26,061 (La.App. 2 Cir. 9/21/94), 643 So.2d 249; Korson v. Independence Mall I, Ltd., 595 So.2d 1174 (La.App. 5 Cir.1992). Absent fraud, shareholders, directors, and officers are not personally liable for the debts of the corporation, especially when they deal with other corporations. La.R.S. 12:95; Fine Iron Works v. Louisiana World Exposition, 472 So.2d 201 (La.App. 4 Cir.), writ denied, 477 |gSo.2d 104 (La.1985); Automatic Coin Enterprises, Inc. v. Vend-Tronics, Inc., 433 So.2d 766 (La.App. 5 Cir.), writ denied, 440 So.2d 756 (La.1983).
Louisiana Courts have consistently applied this rule in denying recovery against officers of a corporation for the tort of conversion. In American Bank & Trust v. Shel-Boze, Inc., 527 So.2d 1052 (La.App. 1 Cir.), writ denied, 532 So.2d 155 (La.1988), the plaintiff bank brought an action against the installers of carpeting and fixtures in two residences on which the bank held mortgages, after the installers had removed component parts which were subject to the bank’s mortgage. The bank brought suit against defendant corporations and against the corporate officers responsible for removing the fixtures. In denying recovery against the officers, the court stated:
*701 Ambank joined as defendants an individual officer of each corporate defendant in his individual capacity. We find that the evidence fails to establish personal liability of these individuals to Ambank for the sums demanded from them respective companies. Each of them operated at all times on behalf of his principal corporation. It is elementary that they are not individually liable for corporate obligations.
American Bank & Trust, 527 So.2d at 1056. See also Harper Oil Field Services v. Dugas, 451 So.2d 96 (La.App. 3 Cir.1984).
This case clearly involves a commercial dispute among corporations, and although it is styled as a tort of conversion by Cameron Equipment, the dispute is better described as a breach of warranty by the seller, Petroleum Services. After a thorough review of the record, we find that the elements of fraud necessary to hold Travis Ward personally liable are simply not present. The record reflects that the sale of the engines to Cameron Equipment was directed by Jim Davis, an agent for Petroleum Services who resigned shortly thereafter. The record reflects that Travis Ward was unaware that the engines had been sold to Cameron Equipment at the time of the second sale. Travis Ward executed the second sale of the engines only in his | {[representative capacity as president of Petroleum Services. We therefore find that the trial court was correct in denying recovery against Travis Ward.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Cameron Equipment 1987, Inc.
AFFIRMED.